[Civ. No. 40791. First Dist., Div. Four. Apr. 25, 1978.]

PHILLIP A. LANAM, Plaintiff and Respondent, v.
CIVIL SERVICE COMMISSION OF THE CITY OF UKIAH,
Defendant and Respondent;
CITY OF UKIAH, Real Party in Interest and Appellant.

316

COUNSEL

Randall A. Hays, City Attorney, for Real Party in Interest and Appellant.

Thomas S. Brigham for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

RATTIGAN, Acting P. J.—The City of Ukiah (City) requires certain classes of its employees to reside within a so-called "residency area" which is peripheral to its territorial boundaries. Respondent, an affected employee, was dismissed from his position because he resided outside the area. He commenced this proceeding in administrative mandamus against the City, seeking reinstatement and reimbursement for lost wages. The trial court determined that he had been unlawfully dismissed because the dimensions of the residency area violated the applicable provision of the California Constitution (art. XI, § 10, subd. (b)),[1] and entered judgment granting the relief prayed. The City appeals.

The pertinent evidence, as received at the hearing conducted upon respondent's petition, may be summarized as follows: In 1966, the city council adopted a resolution requiring that all new employees in the "Classified Service System" live within an area drawn by hand on a map attached to the resolution and incorporated in it by reference.[2] Respon-

[1]"A city or county, including any chartered city or chartered county, or public district, may not require that its employees be residents of such city, county, or district; except that such employees *may be required to reside within a reasonable and specific distance* of their place of employment or other designated location." (Italics added.)

[2]The map depicts the City at its location along the north-south corridor of Highway 101, and immediately west of the Russian River, in Mendocino County. The residency

dent became a new "classified employee" of the City in 1969, when he was hired as a fireman. He later made his home in Potter Valley, outside the residency area. (See fn. 2, *ante.*) He was dismissed, for that reason, after civil service proceedings which need not be described.

The City's fire chief testified in effect that its residence requirement was exacted of firemen to insure their availability in response to fire calls when they were off duty. He further testified that there was only one highway route in and out of Potter Valley, and that the City did not want its safety personnel to live in areas where they might be isolated from their duties by "natural disasters" such as "flooding."

There was evidence that some neighborhoods located within the residency area, but across the Russian River from the City, were occasionally isolated by flooding conditions on the river. Respondent introduced a declaration which recited comparative automobile mileages and travel times involving the City, Potter Valley, and other points both inside and outside the residency area.[3]

The trial court made the following pertinent findings of fact:

"10. The residency area excludes many areas which are as close or closer to downtown Ukiah in air miles and road miles, and which are accessible by auto to downtown Ukiah in as little or less time than included areas.

"11. Potter Valley [where respondent resided] is no more or less vulnerable to isolation by flood or other natural disaster than many populous areas within the present residency area.

---

area is drawn on the map, apparently by free hand, in the shape of an irregular oval surrounding the City. (The record does not indicate how or why the contours of the area were located.) The long axis of the oval runs from a point on Highway 101, approximately two road miles south of the City's center, to a point about six airline miles north of it. The community of Potter Valley is two airline miles outside the oval, east of its northern extremity, and approximately fifteen road miles northeast of the City over paved highways.

[3]The declaration was executed by one Kathleen Baird. It recited her compilation of the distances in miles, and the automobile travel times within applicable speed limits, between a single point in the City and 12 locations (including respondent's residence in Potter Valley). The travel times were 16.5 or 17 minutes for 3 points *inside* the residency area, 15.5 minutes for respondent's residence, and between 7.5 and 17 minutes for 8 other points *outside* the area. The Baird declaration was received in evidence without objection, and the City made no attempt to impeach or disprove its contents.

"12. The Ukiah residency area *is not reasonable* or uniform with respect to any known criteria of employment and is not tied to any specific distance from the employee's place of employment or other designated location." (Italics added.)

Under "Conclusions Of Law," the court stated in pertinent part:

"7. Ukiah's residency area ... and residency requirement ... are unconstitutional under California Constitution Article XI, Section ... [10, subd. (b)]....

"8. ... [The City's] ... dismissal of ... [respondent] ... was illegal and unconstitutional."

On its appeal from the ensuing judgment, the City's argument rests upon the premise that the legislative action which established its residence requirement, and the area involved, is attended by a strong presumption of validity. The premise is undeniably correct (*Griswold* v. *County of San Diego* (1973) 32 Cal.App.3d 56, 67 [107 Cal.Rptr. 845]), but its simplistic application does not answer the question whether the legislative action meets the constitutional standards of specificity and reasonableness. (See fn. 1, *ante*.) ■ "Appellant's argument that the presumption of legislative validity operates in favor of ... [a statute] ... is of little help when a direct challenge to its constitutionality is made .... It is not the presumption that determines the constitutionality or unconstitutionality of a statute but the fact of its operation and effect in a given case." (*Paley* v. *Bank of America* (1958) 159 Cal.App.2d 500, 506 [324 P.2d 35].)

■ The legislative action was "reasonable" in itself, within the meaning of the permissive constitutional language, insofar as its purpose was to require the City's public safety employees to live at places from which they could effectively be called to duty when they were needed. (Cf. *Ector* v. *City of Torrance* (1973) 10 Cal.3d 129, 134-135 [109 Cal.Rptr. 849, 514 P.2d 433]; *Marabuto* v. *Town of Emeryville* (1960) 183 Cal.App.2d 406, 410 [6 Cal.Rptr. 690]; 56 Ops.Cal.Atty.Gen. 57, 58-60 (1973); 59 Ops.Cal.Atty.Gen. 136, 138 (1976).) The City undertook to effectuate this purpose by translating the constitutional requirement of "reasonable and specific distance" into an area drawn on a map. The map defined a perceptibly "specific" distance as to any point within the area, measurable in airline or road miles according to the scale of the map.

However, the mere specification of a "distance" in miles does not make it "reasonable." Where emergency transit is the purpose of its specification, its measurement in airline miles may not be "reasonable" if it is not traversible by road, and its measurement in road miles may not be "reasonable" if its travel time does not comport with the purpose. (Cf. 59 Ops.Cal.Atty.Gen. 136, *supra,* at p. 140.)

The trial court applied these principles in determining that the City's residency area was *not* "reasonable" within the meaning of the permissive constitutional language. Its findings to this effect (Nos. 10, 11 and 12, quoted above) invoked the constitutional standard, which means that they are findings of "the ultimate facts, those to which the legal consequences attach." (*People* v. *Hecker* (1960) 179 Cal.App.2d 823, 832 [4 Cal.Rptr. 334]; *London* v. *Guberman* (1963) 214 Cal.App.2d 215, 219 [29 Cal.Rptr. 279].) Since they are findings of ultimate fact, the terminal question is whether they are supported by substantial evidence. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59, 62 [134 Cal.Rptr. 220].) They are clearly supported by the Baird declaration (see fn. 3, *ante*) and the other evidence summarized above.

The judgment is affirmed.

Christian, J., and Ragan, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.