[Civ. No. 42191. First Dist., Div. Two. Oct. 5, 1979.]

CANDIS LEE COOPERRIDER, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF
SAN FRANCISCO, Defendant and Appellant.

## COUNSEL

Linda A. Cree for Plaintiff and Appellant.

Thomas M. O'Connor and George Agnost, City Attorneys, and Michael C. Killelea, Deputy City Attorney, for Defendant and Appellant.

## OPINION

**TAYLOR, P. J.**—The San Francisco Civil Service Commission (Commission) appeals from a judgment granting Cooperrider's petition for a writ of mandate directing it to accept and process her application for employment, as the one-year durational residency requirement of San Francisco Administrative Code section 16.98(a) was unconstitutional, as it violated the equal protection clause of the federal Constitution as well as the state Constitution. Cooperrider cross-appeals from the portion of the judgment holding that article XI, section 10, subdivision (b) of the state Constitution applies only to employees of chartered cities and not to applicants. The Commission argues that: 1) Cooperrider had no standing; 2) the court failed to apply the presumption of constitutionality; and 3) there was substantial evidence to support either the strict scrutiny or rational basis test. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The court found the pertinent facts as follows: In September 1976, the Commission gave notice that commencing November 6, 1976, an open and competitive examination would be held for the position of aquarist (class No. 3506).[1] Pursuant to San Francisco Administrative Code section 16.98(a), applicants were required to have resided within the City and

---

[1] A class 3506 aquarist cares for living exhibits, maintains equipment, assists in specimen collection and laboratory studies, and conducts visitor tours through an aquarium. The examination for the position involves a written test, qualification appraisal, and a swimming test. Minimum qualifications include high school graduation or its equivalent, six months' experience as an aquarist or fish hatchery biologist or its equivalent education in biological science, and a valid state driver's license.

County of San Francisco for one year immediately prior to the closing date for the applications. Cooperrider, a continuing resident of Piedmont since August 1976 attempted to submit an application. Her application was refused solely on the basis that she was not then nor had she for the past year been a resident of San Francisco.[2] Except for the one-year durational residency requirement of Administrative Code section 16.98(a), Cooperrider fully qualified as an applicant for the examination.

At the hearing before the court, no evidence was offered that the one-year prior durational residency requirement, per se, adds to the knowledge of an applicant for the position or in the performance of the duties thereof.

The court concluded that: 1) Cooperrider had exhausted all administrative remedies and had standing to challenge the Administrative Code by writ of mandate; 2) the one-year durational residency requirement imposed by San Francisco Administrative Code section 16.98(a) constituted state action which creates two classes of persons with respect to eligibility requirements for consideration for public service positions and impinges upon two constitutionally protected fundamental rights—the right to travel and the right to apply for public service positions without invidious discrimination; 3) no substantial evidence was offered demonstrating either a "rational relationship," a "reasonable necessity," or a "compelling state interest" for a requirement that an applicant for public employment must have been a resident of San Francisco for one year prior to making application to the Commission and, therefore, Administrative Code section 16.98(a) violates the equal protection clauses of the federal and state Constitutions; and 4) article XI, section 10.5 (now art. XI, § 10, subd. (b)) of the California Constitution prohibiting chartered cities from requiring that employees be residents of the cities in which they work, except insofar as they may be required to live within a specified and reasonable distance of their place of employment, is not dispositive, as it applies only to employees or those currently employed by San Francisco, and does not apply to applicants.

Preliminarily, we dispose of the Commission's contentions concerning Cooperrider's standing and the presumption of constitutionality. As to standing, the Commission argues that as an admitted nonresident, Cooperrider had no standing to seek relief by mandate.

[2]Only the durational residency requirement is in issue, as the parties stipulated that even if Cooperrider had moved to San Francisco, she would not have been permitted to take the examination.

"The writ of mandate may issue upon the petition of a 'party beneficially interested' (Code Civ. Proc., § 1086) to compel the performance of 'an act which the law specially enjoins, as a duty resulting from an office, trust or station. . . .' (Code Civ. Proc., § 1085.) ■ The exercise of jurisdiction in mandamus rests to a considerable extent in the wise discretion of the court. (*Wheelright* v. *County of Marin,* 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537].) In exercising this discretion the courts balance the applicant's need for relief (i.e., his beneficial interest) against the public need for enforcement of the official duty." (*McDonald* v. *Stockton Met. Transit Dist.,* 36 Cal.App.3d 436, 440 [111 Cal.Rptr. 637].) ■ As Cooperrider has suffered substantial damage by being denied the opportunity to apply for employment, the court properly concluded that the writ was necessary to protect her interest (*Parker* v. *Bowron,* 40 Cal.2d 344, 351 [254 P.2d 6]).

The Commission also contends that the court failed to apply the presumption of validity to the San Francisco Administrative Code provision here in issue. ■ As this court (Div. Four) recently said in *Lanam* v. *Civil Service Com.,* 80 Cal.App.3d 315, 319 [145 Cal.Rptr. 590], such a contention " '. . . is of little help when a direct challenge to its constitutionality is made . . . . It is not the presumption that determines the constitutionality or unconstitutionality of a statute but the fact of its operation and effect in a given case.' "

We turn first to the scope of the term "employees," as used in article XI, section 10, subdivision (b)[3] of the state Constitution, which reads as follows: "(b) *A city* or county, *including any chartered city* or chartered county, or public district, *may not require that its employees be residents of such city, county, or district;* except that such employees may be required to reside within a reasonable and specific distance of their place of employment or other designated location" (italics added).[4]

■ The Commission contends that the trial court properly conclud-ed that the term "employees," as used above, did not include "appli-

[3]Subdivision (b) is former section 10.5, as adopted by the voters on November 5, 1974; in 1976, it was repealed (Assem. Const. Amend. No. 40, Stats. 1976, res. ch. 5, eff. July 9, 1976) and reenacted as subdivision (b) (Assem. Const. Amend. No. 90, Stats. 1976, res. ch. 24, eff. July 8, 1976). (See Stats. 1976, p. 6659.)

[4]The constitutional amendment was enacted in response to *Ector* v. *City of Torrance,* 10 Cal.3d 129 [109 Cal.Rptr. 849, 514 P.2d 433], in which our Supreme Court, on the basis of the federal equal protection clause, sustained the validity of a charter city provision that required all employees to be city residents no later than six months *after* employment commenced.

cants." ■ A court must interpret a constitutional amendment to give effect to the intent of the voters. The amendment should be construed in accordance with the natural and ordinary meaning of the words generally understood at the time of the enactment, unless it appears that the voters construed the words in a technical sense (*Kaiser* v. *Hopkins,* 6 Cal.2d 537 [58 P.2d 1278]). Here, the term was not used in a technical sense, and its natural and ordinary meaning, set forth below,[5] is of little help. Our Supreme Court has indicated that the term has no fixed meaning that must control in every instance (*Knight* v. *Bd. etc. Employees' Retirement,* 32 Cal.2d 400, 402 [196 P.2d 547, 5 A.L.R.2d 410]). For purposes of the workers' compensation laws, the term "employees" was held to apply to applicants in · *Laeng* v. *Workmen's Comp. Appeals Bd.,* 6 Cal.3d 771, 779-783 [100 Cal.Rptr. 377, 494 P.2d 1], overruling the long standing contrary rule of *Sumner* v. *Edmunds,* 130 Cal.App. 770, 778 [21 P.2d 159].

■ Where, as here, a constitutional amendment is subject to varying interpretations, evidence of its purpose may be drawn from the historical context of the amendment, and the ballot arguments favoring the measure (*California Housing Finance Agency* v. *Patitucci,* 22 Cal.3d 171, 177 [148 Cal.Rptr. 875, 583 P.2d 729]). The latter are helpful in determining the meaning of uncertain language (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization,* 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281]).

■ The ballot arguments, quoted in pertinent part below,[6] clearly indicate that the proponents and opponents both understood that the measure encompassed applicants. Both sides were concerned that a residency requirement would affect the quality of applicants. The objective of the amendment was to permit any qualified individual to apply for city employment, regardless of residence.

---

[5] "1. one employed by another usually in a position below the executive level and usually for wages. 2 *in labor relations:* any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker." (Webster's Third New Internat. Dict.. p. 743.) (Italics added.)

[6] The section in question appeared as Proposition number 5 on the November 5, 1974, General Election Ballot. Ballot arguments pro and con appeared at pages 22 and 23 of the official ballot pamphlet.

Among the pertinent "pro" arguments were the following:

"[T]he single and most important concern for Californians regarding the residency issue is its effect upon the number and quality of applicants for charter city and county employment. A good police officer, planner, fireman, engineer, paramedic, environmental standards supervisor or sanitation worker is hard to find even under the most favorable of conditions—bodies, yes; but qualified persons, no. Citizens of these communities deserve more than mere job occupants, they deserve quality employees. *Residency requirements*

The literal language of enactments may be disregarded to avoid absurd results and to fulfill the apparent intent of the framers (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d, p. 245; *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]).[7] Constitutional enactments must receive a liberal, practical, common sense construction, which will meet changed conditions and the growing needs of the public (*Amador Valley, supra,* 22 Cal.3d 208).

We hold, therefore, that the term "employees," as used in section 10, subdivision (b) of article XI also includes applicants.

We also note that were we here to interpret "employees" to exclude applicants and examinees, we would be faced with the absurd situation where individuals would have to be residents of a city in order to apply or test for a position, but would be permitted to move out of the city the day after they are employed.[8]

---

keep hundreds of highly qualified individuals from employment in those jurisdictions, and necessarily reduce the pool of quality personnel entering employment in those communities. . . .

"We think that freedom to *recruit and employ* the best people, no matter where they live, will help guarantee better city and county government." (Italics added.) (Ballot Pamp., argument in favor of Prop. 5, Gen. Elec. (Nov. 5, 1974) p. 22.)

In the rebuttal to this argument, the opposition to the proposition said: "A residency requirement does not prevent recruitment anywhere, but simply provides that once individuals have accepted employment, they also accept the community employing them. Most qualified employees are, and can be, employed from among community residents. The few with special or technical skills required to be recruited from outside a city should become residents, but only if the voters of a city so require." (Ballot Pamp., rebuttal to argument in favor of Prop. 5, *supra,* p. 22.)

The "anti" argument contained the following: "We agree that public employees, like all other employees, should have complete freedom to choose where they will live, *but having made the choice to become an employee of a particular city* they also should be willing to reside in that city if the voters believe this is economically and socially desirable. . . ." (Italics added.) (Ballot Pamp., argument against Prop. 5, *supra,* p. 23.)

[7] In *Lanam* v. *Civil Service Com., supra,* 80 Cal.App.3d 315, this court (Div. Four) rejected a literal rendering of the term "reasonable and specific distance" of article XI, section 10, subdivision (b).

[8] We are, of course, aware of *McCarthy* v. *Philadelphia Civil Serv. Comm'n,* 424 U.S. 645 [47 L.Ed.2d 366, 96 S.Ct. 1154], where the United States Supreme Court indicated, at page 646, [47 L.Ed.2d at p. 368], that in *Shapiro* v. *Thompson,* 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322], *Dunn* v. *Blumstein,* 405 U.S. 330 [31 L.Ed.2d 274, 92 S.Ct. 995], and *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250 [39 L.Ed.2d 306, 94 S.Ct. 1076], it had not questioned the validity of a condition placed upon municipal employment that a person be a resident at the time of his or her application. Of course, *McCarthy, supra,* based on federal constitutional concepts, does not affect our above interpretation of the state constitutional provision.

It follows that San Francisco Administrative Code section 16.98(a) is contravened by subdivision (b) of section 10 of article XI. As this conclusion, in effect, disposes of the appeal, we will discuss the remaining contentions briefly. We confine the context of our discussion to the equal protection provision of the state Constitution.[9] (Art. IV, § 16.)

The court below found that the durational residency requirement impinged on two fundamental rights, the right to travel (*Shapiro* v. *Thompson, supra,* 394 U.S. 618) and the right to apply for public service positions without invidious discrimination. (*Terry* v. *Civil Service Commission,* 108 Cal.App.2d 861, 870 [240 P.2d 691].)

As to the right to travel, the Commission relies on *Ector* v. *City of Torrance, supra,* 10 Cal.3d 129, to argue that there is no right to commute. This argument totally ignores the effect of article XI, section 10, subdivision (b), discussed above. The constitutional provision expressly provides that a city may not require that applicants or employees be residents, except that after employment they may be required to reside within a reasonable and specific distance of their place of employment. Thus, in the area of intrastate travel, our state Constitution presently provides greater individual protection than the federal law. Further, the right protected here is not a right to commute, but the initial right to migrate, resettle, find a new job and start a new life (*Memorial Hospital* v. *Maricopa County, supra,* 415 U.S. 250; see *Residency Requirements for Municipal Employees: Denial of a Right to Commute?* 7 U.S.F. L.Rev. 508, at p. 527).

■ The right to be considered for public employment without invidious discrimination or unreasonable limitation has too long been well established in this state (*Terry* v. *Civil Service Commission, supra,* 108 Cal.App.2d, p. 870). The Commission argues that Cooperrider had no constitutional right to work for the city. The old rights-privilege distinction is no longer valid (*Shapiro* v. *Thompson, supra,* 394 U.S., p. 627 [22 L.Ed.2d, pp. 610-611]) and discrimination against some in public employment can no longer be practiced on the basis that the employment is

---

[9] We see no need to reach the federal equal protection issues here. Our state Supreme Court has exercised independency in its application of the state equal protection clause, finding rights to be suspect where the United States Supreme Court has declined to do so (*Serrano* v. *Priest,* 18 Cal.3d 728, 764-767 [135 Cal.Rptr. 345, 557 P.2d 929]; *Sail'er Inn, Inc* v. *Kirby,* 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *In re Antazo,* 3 Cal.3d 100, 112 [89 Cal.Rptr. 255, 473 P.2d 999]). Also, our Supreme Court recently noted the United States Supreme Court's formulations in the equal protection area are in flux (*Johnson* v. *Hamilton,* 15 Cal.3d 461, 468 [125 Cal.Rptr. 129, 154 P.2d 881]).

a privilege which can be withheld from all (*Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]). Thus, the right to be considered for public employment without unreasonable or invidious distinctions is as fundamental as a right to subsistence benefits (*Shapiro* v. *Thompson, supra*) or medical care (*Memorial Hospital* v. *Maricopa County, supra,* 415 U.S. 250).

The Commission attempts to distinguish *Terry* v. *Civil Service Commission, supra,* 108 Cal.App.2d 861, and urges us to rely on *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], and *Hardy* v. *Stumpf,* 21 Cal.3d 1 [145 Cal.Rptr. 176, 576 P.2d 1342], as applicable law. In *D'Amico,* the statutory classification involved the type of medical degree and content of education required for licensing as physicians and surgeons. In *Hardy, supra,* a wall-climb portion of a physical agility test for policemen was held not to abridge a fundamental right to pursue a lawful occupation, for that right presupposes an ability to perform the job (p. 8). Both *Hardy* and *D'Amico* involved challenges to specific qualifications for the position after an application had been submitted. The instant case, however, involves the fundamental right to submit an application for *any* public service job, irrespective of the specific qualifications for that position.

As two fundamental rights are involved, the application of the strict scrutiny test is required.[10] (cf. *Serrano* v. *Priest, supra,* 18 Cal.3d, pp. 764-765; *Johnson* v. *Hamilton,* 15 Cal.3d 461 [125 Cal.Rptr. 129, 541 P.2d 881]; *Bay Area Women's Coalition* v. *City and County of San Francisco,* 78 Cal.App.3d 961, 968 [144 Cal.Rptr. 591]). Pursuant to this test, the Commission must demonstrate a compelling state interest in the classification it made; it must also demonstrate that no less intrusive means could achieve the same result (*Serrano* v. *Priest, supra*).

 The Commission asserts that contrary to the trial court's finding, it adduced substantial evidence to meet both prongs of the above test. This contention is without merit. The record indicates that the Commission sought to justify the durational residence requirement for the position on several grounds, but offered evidence only as to its attempts to use city funds to prevent unemployment among the impoverished

---

[10]The Commission, citing *Ector* v. *City of Torrance, supra,* 10 Cal.3d 129, argues that the rational basis test should be applied. This argument overlooks the fact that *Ector* did not involve a fundamental right and carefully distinguished durational residency requirements, like the instant one.

residents of the city and its affirmative action policy.[11] Not surprisingly, the Commission was not able to establish that there was even a rational relationship between these objectives and the durational residency requirement, let alone a compelling interest. The reduction in unemployment among inner-city minorities relates to those whom the city hires, and not the requirement that applicants or employees live in the city.

Just as it is unconstitutional to apportion economic benefits according to a tax contribution (*Shapiro* v. *Thompson, supra,* 394 U.S., pp. 633-634 [22 L.Ed.2d, pp. 614-615]), the Commission cannot rely on the public coffer theory to require residence to recirculate salaries within the economy of the municipality that pays those salaries (*Krzewinski* v. *Kugler* (D.N.J. 1972) 338 F.Supp. 492, pp. 498-499).

We conclude, therefore, that the court properly concluded that the city's durational residency requirement was also unconstitutional, as it violated the equal protection provision of the state Constitution.

The judgment is affirmed. Cooperrider to recover her costs on appeal.

Rouse, J., and Miller, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied December 6, 1979.

---

[11]The record indicates that at the time here pertinent, the city budgeted three aquarist positions and anticipated "possibility of one permanent vacancy and perhaps a temporary vacancy, if necessary, for sick and vacation relief." The civil service list would last for 2 years; of the 98 persons who applied, 6 were rejected because of the residency requirement; of the 57 who met the residency and education requirements, 36 percent were minority.