[No. C015319. Third Dist. Jan. 24, 1994.]

WILLIAM K. GRAHAM, Plaintiff and Respondent, v.
KIRKWOOD MEADOWS PUBLIC UTILITIES DISTRICT, Defendant
and Appellant.

**COUNSEL**

Kronick, Moskovitz, Tiedemann & Girard, Philip A. Wright and Brenda J. Spence for Defendant and Appellant.

Timothy W. Pemberton for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Appellant Kirkwood Meadows Public Utilities District (the District) appeals from the trial court's issuance of a writ of administrative mandamus commanding the District to reinstate William K. Graham as an employee of the District. The District contends the trial court erred in concluding the District's employee residency requirement was unlawful. We shall reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The District provides water, sewer, and other public services to the community of Kirkwood, California. The District must respond quickly in the event of water leaks, leaks in wastewater collection, raw sewage spills, power failures, and illegal discharges in wastewater collection. The District also assists with firefighting by ensuring that water storage and pressure is maintained and recharged.

In September 1987, the District's board of directors enacted Policy Statement No. 445 (Policy 445), which provides that certain employment positions, including water/wastewater operators, "are required to reside within three (3) driving miles of the wastewater treatment plant complex." Policy 445 expresses the reason for the policy as follows: "The District is located in a remote area of the Sierra Mountains which on regular occasion is isolated from other counties or reasonable access due to weather conditions and road closure. The District provides water service necessary for health reasons as well as fire protection. The District provides water treatment to protect the environment under a strict NPDES permit requiring frequent operations attention. Therefore the District needs to have competent personnel available to assure these services are maintained and the twenty four (24) hour

emergency on-call response is available even when the area is isolated due to weather."

In September 1987, Graham began working for the District as a water/ wastewater operator, with duties including equipment maintenance, cleanup and waste disposal, chemical handling, pipe repair and emergency repair. Every year since his hire, Graham signed an employment agreement agreeing to comply with Policy 445.

In December 1991, Graham informed the District that he had moved to Gardnerville, Nevada, which is a 35-minute commute from the District, and outside the three-mile distance allowed by Policy 445. The District informed Graham his employment would be terminated if he failed to comply with Policy 445.

In January 1992, the District served Graham with a notice of intent to terminate due to his ongoing failure to comply with Policy 445. In February 1992, the District manager held a pretermination hearing (after withdrawal of a premature notice of termination), at which Graham suggested the alternative that he agree to stay in the area when bad weather was forecast. The District thereafter determined sufficient grounds existed for termination and served Graham with a notice of termination.

Graham appealed to the District's employment subcommittee, which held a full evidentiary hearing in March 1992. Based upon oral and documentary evidence, the subcommittee found in favor of the District and affirmed the termination.

In June 1992, Graham filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) in the trial court, alleging Policy 445 violates Government Code section 50083,[1] which prohibits districts from requiring employees to reside within the district. The petition also alleged Policy 445's residency requirement violates the equal protection clause of the California Constitution in that the residency requirement creates a classification affecting his fundamental vested right to continued public employment, is unsupported by any compelling governmental interest, and is not the least burdensome means of achieving the stated purpose. Following a hearing, the trial court issued a peremptory writ of mandate, commanding the District to set aside the Subcommittee's decision and reinstate Graham.

The trial court's findings of fact, as stated in its order, include the following: (1) noncompliance with Policy 445 was the sole reason for

---

[1]Undesignated statutory references are to the Government Code.

Section 50083, provides: "No local agency or district shall require that its employees be residents of such local agency or district."

Graham's discharge; (2) there are no all-season residences outside the District's boundaries and within three miles of the District's wastewater treatment plant complex, such that Policy 445 set up a de facto requirement that the specified employees reside within District boundaries (in violation of section 50083); (3) Policy 445 does not contain findings of fact regarding why the imposition of the residency requirement (to the exclusion of all alternatives) was essential in order for the District to carry out its functions related to sewage treatment and water supply; (4) during Graham's employment, the District did not have a formal 24-hour emergency on-call system; and (5) the District rejected Graham's proposal that he would remain within the District's boundaries when bad weather was forecast.

The trial court's conclusions of law, as stated in its order, include the following: (1) the District's termination of Graham affected his fundamental right to continued public employment, thereby calling for the trial court to exercise its own independent judgment in reviewing the administrative decision; (2) since the dismissal affected a fundamental right, the District bore the burden of showing a compelling interest justifying the residency requirement and the absence of less burdensome means to achieve its purpose; (3) Policy 445 facially violates section 50083; and (4) the District abused its discretion, acted in excess of its jurisdiction, and denied Graham a fair trial in the administrative hearing.

The peremptory writ of mandate issued on December 14, 1992. The District appealed and petitioned for a writ of supersedeas or other stay order. We denied the petition for a writ of supersedeas or other stay order. We have also denied the District's request for judicial notice of documentary evidence not previously presented.

DISCUSSION

I. *Standard of Review*

The District does not dispute that the trial court properly applied its independent judgment in reviewing the administrative decision. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].)

██ "The appellate court's function, in reviewing determinations made by the superior court in its 'independent judgment' review of an administrative agency decision, is to apply the substantial evidence test to factual findings. Factual determinations by the trial court will be upheld if substantial evidence, gleaned from the administrative record, supports them. [Citations.] The trial court's determinations of issues of law, however, are fully

reviewable by this court, and we are bound neither by the preliminary resolution [by the administrative board] nor by the subsequent trial court decision. [Citations.]" (*Imperial Irrigation Dist.* v. *State Wat. Resources Control Bd.* (1990) 225 Cal.App.3d 548, 553 [275 Cal.Rptr. 250].)

## II. *Sufficiency of Record On Appeal*

■ We first dispose of Graham's claim that the record on appeal is insufficient for review, because the trial court hearing on the petition for administrative mandamus was unreported. We disagree.

The record on appeal includes the administrative record, which contains oral and documentary evidence and which was presented in the trial court.[2] Although the record contains no court minutes, the trial court's order granting the petition (prepared by Graham's attorney) reflects that no new evidence was presented in the trial court. Thus, the order states Graham's "motion" for a writ of mandate was heard and "[a]fter reading the moving and opposing papers, hearing argument on the matter, and good cause appearing therefor," the court made its decision.[3] The order then sets forth the trial court's findings of fact and conclusions of law. Consequently, the absence of a reporter's transcript of the trial court hearing does not preclude review. Moreover, with one exception, this appeal does not present issues of sufficiency of the evidence to support the trial court's factual findings.[4]

We also reject Graham's argument that the District, by failing to secure a court reporter and transcript of the trial court hearing, consented to issuance of the writ or waived any objection to it.

---

[2]Due to clerical error, there were gaps in the tape recording of the administrative hearing. However, a summary of the missing testimony was prepared, signed by the administrative decisionmakers, and made part of the administrative record as a supplement.

[3]Graham does not dispute the District's assertion that no new evidence was admitted at the hearing in the trial court. Graham merely asserts counsel made unspecified "admissions of fact" at the hearing.

Graham asserts a reporter's transcript of the trial court hearing would have shown the District relied on Policy 445 itself to justify the residency requirement because there was no evidence in the administrative record to support the employment subcommittee's findings that (1) the three-mile limit includes all housing on the Kirkwood side of the mountain passes, and (2) public health, safety, and environment reasons support the policy. However, the administrative record does reflect evidence on both points.

[4]The one exception is the trial court's finding that the three-mile distance encompasses an area to the west of the treatment plant beyond the point where the road closes. In our discussion of this matter, *post*, we will presume for purposes of this appeal that evidence was presented to support the finding. (*Buckhart* v. *San Francisco Residential Rent etc. Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298].)

III. *Section 50083*

■ The District contends the trial court erred in holding Policy 445 violates section 50083's prohibition against requiring district employees to reside within the district. We agree with the District.

As indicated, section 50083 provides: "No local agency or district shall require that its employees be residents of such local agency or district."

The trial court found Policy 445 is a de facto violation of the statute and concluded Policy 445 facially violates the statute.

However, Policy 445 does not on its face violate the statute, because the policy does not mandate that employees live within the District's boundaries. Graham's petition in the trial court conceded that the three-mile radius set forth in Policy 445 constituted an area larger than the District's boundaries.

As to the issue whether Policy 445 is a de facto violation of the statute, Graham points out the trial court found "[t]here are no all season residences outside the [District's] boundaries and within three (3) driving miles of the [District's] wastewater treatment plant complex." However, the state of the housing market does not render Policy 445 defective. Graham cites 56 Ops.Cal.Atty.Gen. 57 (1973) for its statement: "If it could be shown, for example, that a city was attempting to circumvent the language of the section by adoption of residentiary requirement boundaries similar to, although not exactly the same as the city limits, a court would probably set the requirement aside on the ground that the requirement violated the clear intent of section 50083." (*Id.*, at p. 58.)

Here, Graham makes no showing that the District was attempting to circumvent the statute by adoption of the three-mile requirement. The mere state of the housing market does not demonstrate an intent by the District to circumvent the law.

Moreover, section 50083 must be construed in light of the constitutional provision allowing residency restrictions. Thus, California Constitution, article XI, section 10, subdivision (b) (hereafter article XI, section 10(b)), provides: "A city or county, including any chartered city or chartered county, or public district, may not require that its employees be residents of such city, county, or district; *except that such employees may be required to reside within a reasonable and specific distance of their place of employment or other designated location.*" (Italics added.)

Thus, a reasonable distance requirement will not violate section 50083.[5]

Here, given the District's duties to assure ongoing services for the protection of public health, safety, and environment, the residency requirement was reasonable to assure that essential employees be available to perform their duties in the event of road closure due to weather conditions.

The findings of the employment subcommittee were that the three-mile limit effectively included all housing on the Kirkwood side of the mountain passes. Thus, the administrative body found: "The Kirkwood area is located high in the Sierra Nevada mountains. It is an isolated community only accessible via Highway 88. Highway 88 passes through two mountain passes, one just to the west [Carson Spur] and the other just to the east [Carson Pass] of the Kirkwood area. Carson Pass is located immediately east of Kirkwood, between Kirkwood and the State of Nevada, at elevation 8,573 feet. Three miles was selected for purposes of Policy Statement No. 445 because this effectively includes all of the housing on the Kirkwood side of the mountain passes.

"[ ] Highway 88 at Carson Pass closes on numerous occasions during the winter months due to snow, wind and avalanches. It was closed on six occasions in 1991, twice in 1990, six times in 1989, six times in 1988, twice in 1987, three times in 1986, and six times in 1985, including a closure for a full day in 1990, a full day in 1989, and numerous days in 1986. In recent years, there has been a drought in the Sierra Nevada mountains and the road closures have not been as bad as they could have been in average or above average snow fall years.

"[ ] Because of the remote location of Kirkwood, and the potential inaccessibility due to road closures and the unpredictability of the sudden weather changes, it is imperative for the protection of the public health and safety and the environment that the District water/wastewater operators reside on the Kirkwood side of the two mountain passes. . . ."

Graham does not seriously dispute that road closure was a legitimate concern. Although he complains no evidence was submitted from *CalTrans*, CalTrans road closure data was accepted into evidence by the administrative

---

[5]The District complains of the trial court's finding that Policy 445 does not contain findings of fact to justify the residency requirement. We agree with the District that Policy 445 is a quasi-legislative decision (*Dominey* v. *Department of Personnel Administration* (1988) 205 Cal.App.3d 729, 736 [252 Cal.Rptr. 620]), for which express written findings of fact were not required. (*McKinny* v. *Board of Trustees* (1982) 31 Cal.3d 79, 88 [181 Cal.Rptr. 549, 642 P.2d 460]; *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 563-564 [183 Cal.Rptr. 73, 645 P.2d 124].)

body. Graham objected to the document as unauthenticated but does not raise that issue in this appeal. Moreover, witnesses testified about personal experiences with road closures.

Graham argues Policy 445 is unreasonable and arbitrary, because it does not serve the stated purpose of assuring operations during times of road closure, in that the three-mile limit encompasses territory beyond the point of road closure to the west of the plant complex. Thus, the trial court found: "The distance from the [ ] wastewater treatment plant complex to that portion of Hwy 88 west of Kirkwood Meadows (at which point the highway to the Carson Spur is closed) is less than three (3) driving miles from the [ ] wastewater treatment plant complex . . . ."[6]

*Graham* cites *Lanam* v. *Civil Service Com.* (1978) 80 Cal.App.3d 315 [145 Cal.Rptr. 590], for the proposition that where emergency transit is the purpose of a residency restriction, measurement in road miles may not be reasonable if travel time does not comport with the purpose. *Lanam* involved a firefighter residency requirement based on a hand drawn map in the shape of an irregular oval. (*Id.* at pp. 317-318, fn. 2.) The fire chief testified the map was drawn to exclude areas subject to isolation due to flooding. (*Id.* at p. 318.) However, the evidence showed some areas *within* the zone were also subject to isolation from flooding. (*Ibid.*) The evidence further showed the zone excluded many areas which were as close to the workplace and which had a shorter travel time. (*Ibid.*) The First District affirmed the trial court's determination that the policy was unreasonable because its measurement did not comport with its purpose. (*Id.* at p. 320.)

However, *Lanam* does not mean that the failure to achieve perfection will render a residency restriction invalid. Thus, *International Assn. of Fire Fighters* v. *City of San Leandro* (1986) 181 Cal.App.3d 179 [226 Cal.Rptr. 238], held a city's failure to consider travel time did not render unreasonable a residency restriction designed to ensure rapid emergency response of firefighters, since travel time can vary significantly and individual assessment of travel time would impose an onerous burden on the employer. *Fire Fighters* thus determined that, while *Lanam* identified travel time as a factor to be considered in assessing reasonableness, it did not compel invalidation of any policy which fails to address that factor. (*Fire Fighters, supra,* 181 Cal.App.3d at p. 184.)

Thus, the reasonableness of a policy is evaluated based on whether it is designed to achieve its legitimate objectives. Here, the fact that Policy 445

---

[6]The District asserts this finding is unsupported by the record. However, as indicated (fn. 4, *ante*), in the absence of a transcript of the trial court proceedings, we presume evidence was submitted to support the finding.

does not measure its boundaries by the mountain passes is inconsequential, since the policy does achieve its legitimate objective of encompassing all existing housing between the two mountain passes. Policy 445 is thus reasonably drawn to effectuate the legitimate purpose of ensuring continued operations in bad weather conditions.

We conclude Policy 445 does not violate section 50083.[7]

IV. *Equal Protection*

The District argues the trial court erred in determining Policy 445 violates equal protection. We agree.

A. *Strict Scrutiny v. Rational Basis*

■ The District contends the trial court erred in analyzing Policy 445 under a strict scrutiny test rather than a standard of reasonableness. We agree.

■ California has followed the two-tier approach employed by the United States Supreme Court in reviewing legislative classifications under the equal protection clause. (*Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 417-418 [205 Cal.Rptr. 576].) Under that approach, a strict scrutiny test is applied in cases involving suspect classifications or fundamental interests; the rational basis test applies in all other cases. (*Ibid.*) A fundamental interest for strict scrutiny purposes means a fundamental *constitutional* right. (See 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 602, pp. 55-56.)

■ Here, the trial court concluded Graham had a fundamental right to continue his public employment, and the trial court therefore (1) exercised its independent judgment in reviewing the administrative decision, and (2) subjected Policy 445 to the strict scrutiny test. ■ In so doing, the trial court erred by confusing a fundamental right for purposes of the judicial standard of review of administrative decisions with a fundamental right for

---

[7]In his argument concerning section 50083, Graham injects a contention he was denied a fair trial because a witness at the administrative hearing (former District manager Greg McManus) assertedly refused to answer questions. The District states this claim was not raised in the trial court. In any event, the cited record shows only that McManus declined to answer the question: "Is it fair to say that the District has undertaken no effort to connect [employee] telephones to the system you have described. Yes or no, please. Just yes or no." McManus explained he would not answer because of the way the question was phrased. He did not know what the District has done since he left his position. Thus, Graham fails to demonstrate deprivation of a fair hearing.

purposes of constitutional analysis. The distinction was explained in *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr. 891, 657 P.2d 383], which held the right to retain a driver's license was a "fundamental" right for purposes of independent judicial review of an administrative decision to suspend the license. In explaining that its decision did not alter its prior holding that such right was not a fundamental right invoking strict scrutiny review for constitutional analysis purposes, the Supreme Court stressed an important distinction: ". . . the standard of review question . . . relates to the appropriate relationship between *administrative* and *judicial* adjudicatory decisions, and does not concern the constitutional legitimacy or validity of legislative policy judgments at all. Thus, . . . the fundamental right category does not identify areas in which substantive legislative judgments are in any manner constitutionally suspect or justify unusual judicial scrutiny; rather, that category simply encompasses those quasi-judicial administrative decisions that have an impact on the individual sufficiently vital . . . to compel a full and independent review by the court. [Citation.] [¶] Indeed, . . . the applicability of the independent judgment standard of review does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review. [Citation.]" (*Id.* at pp. 396-397, original italics, internal quotations omitted.)

The Supreme Court cautioned against any "blurring of two separate and distinct senses in which the term 'fundamental' is used. [¶] There is little similarity between the analysis applied in determining (1) whether a right is a 'fundamental right' for equal protection/due process purposes on the one hand, and (2) which scrutiny is applicable for administrative review purposes, on the other. The principle of 'fundamentality' differs depending on the context or analysis within which the concept arises. Thus, for example, when determining which rights are 'fundamental' for due process purposes, a court's attention focuses primarily on whether the right (1) is specifically guaranteed by the Constitution, (2) affects the integrity of the political process, or (3) has a disproportionate impact upon a discrete and insular minority. [Citation.]" (*Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at p. 397.)

Thus, the question is whether Graham had a fundamental *constitutional* right to continued employment (as found by the trial court) or any other fundamental constitutional right that would trigger strict scrutiny.

As to the assertion of a right to continued employment, there is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer. (*Rittenband* v. *Cory,*

*supra* 159 Cal.App.3d 410; *Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 549 [173 Cal.Rptr. 539]; *Hetherington* v. *State Personnel Bd.* (1978) 82 Cal.App.3d 582, 589 [147 Cal.Rptr. 300].) " 'The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government.' [Citation.] No such 'fundamental right' is expressed or implied in the Constitution, and it is not the province of the courts to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. [Citation.]" (*Ector* v. *City of Torrance* (1973) 10 Cal.3d 129, 137 [109 Cal.Rptr. 849, 514 P.2d 433] [applying rational basis test to uphold validity of charter city provision requiring city employees to be city residents].)

*Ector* was decided before article XI, section 10(b), was added to the Constitution. (See *Cooperrider* v. *Civil Service Com.* (1979) 97 Cal.App.3d 495, 500, fn. 3 [158 Cal.Rptr. 801] [constitutional provision was added in response to *Ector*'s holding that § 50083 did not apply to charter cities].) However, the addition of article XI, section 10(b), has not created a fundamental constitutional right invoking strict scrutiny of residency requirements, because the constitutional provision itself expressly authorizes *reasonable* restrictions. The rational basis test continues to apply in cases challenging employment residency restrictions on equal protection grounds. (*Wall* v. *Municipal Court* (1990) 223 Cal.App.3d 247 [272 Cal.Rptr. 702].)

The authorities cited by Graham do not support his position of a constitutional right to continued employment so as to invoke strict scrutiny. Thus, he cites *Lucchesi* v. *City of San Jose* (1980) 104 Cal.App.3d 323 [163 Cal.Rptr. 700], for its statement in a footnote that ". . . the courts of this state have characterized employment as a fundamental interest under the California Constitution. . . ." (*Id.* at p. 333, fn. 9.) However, the court there applied the rational basis test (not strict scrutiny) to a city's policy of giving preference to city employees for firefighter positions. The policy did not meet the rational basis test, because civil service positions were supposed to be based on merit and competence, yet mere employment status did not demonstrate competence. (*Id.* at p. 333.) Since the policy did not even meet the less stringent rational basis test, the court had no need to decide whether the strict scrutiny was required. (*Id.* at p. 333, fn. 9.) Thus, *Lucchesi* provides no support for Graham.

Graham also cites *Cooperrider* v. *Civil Service Com., supra,* 97 Cal.App.3d 495, which applied strict scrutiny to a *durational* residency restriction requiring civil service applicants to reside in the county for one year before the closing date for applications. However, a *durational* or "waiting period" requirement impinges on two fundamental constitutional

rights—the right to travel and the right to apply for public service positions without invidious discrimination—which are not implicated by an ongoing residency requirement for employees. (*Id.* at p. 504, fn. 10, citing *Ector* v. *City of Torrance, supra,* 10 Cal.3d at p. 135 [residency requirement implicates nonfundamental right to commute, not constitutional right to travel].) Thus, Graham's citation to cases discussing the test for durational residency requirements is unavailing. (*Shapiro* v. *Thompson* (1969) 394 U.S. 618, 634 [22 L.Ed. 2d 600, 615, 89 S.Ct. 1322]; *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461 [125 Cal.Rptr. 129, 541 P.2d 881]; *Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 101-102 [107 Cal.Rptr. 20, 507 P.2d 628, 65 A.L.R.3d 1029]; *Wall* v. *Municipal Court, supra,* 223 Cal.App.3d at p. 249.)

Graham cites cases discussing fundamentality for purposes of the judicial standard of review of administrative decisions, a matter which we have already explained is distinct from the question of fundamentality for equal protection purposes. (*Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 661 [147 Cal.Rptr. 502]; *Los Angeles County Employees' Assn.* v. *Sanitation Dist. No. 2* (1979) 89 Cal.App.3d 294 [152 Cal.Rptr. 415].)

We conclude there is no fundamental constitutional right to continued public employment so as to trigger strict scrutiny of Policy 445's residency requirement.

We next consider Graham's assertion that strict scrutiny is invoked because Policy 445 affects his constitutional right to pursue a lawful occupation.

"Notwithstanding the principle enunciated in *Truax* v. *Raich* (1915) 239 U.S. 33, 41 [60 L.Ed. 131, 135 . . .] that the right to work at a lawful occupation is an essential component of liberty, the United States Supreme Court consistently has refused to recognize a fundamental right to particular employment. [Citations.] California courts have followed substantially the same reasoning, holding [ ] that there is no fundamental right to work for a particular employer, public or private. [Citations.]" (*Kubik* v. *Scripps College, supra,* 118 Cal.App.3d at p. 549, fn. omitted [mandatory retirement of college music professor reviewed under rational basis test].)

"[T]he rational basis standard of review is traditionally applied to occupational regulation. [Citation.] The few exceptions invariably have involved a classification which is 'suspect' in constitutional terms." (*Kubik* v. *Scripps College, supra,* 118 Cal.App.3d at pp. 549-550 [citing cases of national origin, sexual preference as fundamental privacy interest, and gender]; see also *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 579 [79

Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] [courts scrutinize limits on opportunity for employment].) Moreover, "the California exceptions noted all have involved the creation of a general barrier to the pursuit of an occupation by a particular group." (*Kubik, supra,* 118 Cal.App.3d at p. 550; see also *Rittenband* v. *Cory, supra,* 159 Cal.App.3d at pp. 417-419 [right to pursue lawful occupation did not invoke strict scrutiny of judge's challenge to statute reducing retirement benefits to judges who delay retirement past age 70].)

We conclude Graham's right to pursue a lawful occupation does not constitute a fundamental constitutional right invoking strict scrutiny in this context.

We conclude the trial court erred in applying the strict scrutiny test. We therefore need not address the parties' arguments concerning the question whether Policy 445 meets the strict scrutiny test.

### B. *Policy 445 Meets the Rational Basis Test*

■ The District argues Policy 445 meets the rational basis test. We agree the record sufficiently establishes the policy meets this test.

The inquiry under the rational basis test is whether the policy bears "some rational relationship to a conceivable legitimate state purpose." (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]; *Rittenband* v. *Cory, supra,* 159 Cal.App.3d at p. 417.) The burden is on the party challenging the constitutionality of the policy to show that it bears no rational relationship to a legitimate governmental purpose. (*Hetherington* v. *State Personnel Bd., supra,* 82 Cal.App.3d 582, 590.)

For the reasons expressed in our discussion of section 50083, we conclude Policy 445 bears a rational relationship to the legitimate governmental purpose of assuring ongoing provision of services affecting the public health, safety, and environment, in times of adverse weather conditions. Accordingly, the trial court erred in issuing the writ of administrative mandamus, and reversal is required.

■ In the "Conclusion" of its brief, the District asserts Graham has been unjustly enriched by reinstatement pending appeal, and the District seeks reimbursement of the salary expended since Graham's reinstatement. Presumably, Graham performed employment services in exchange for the salary and was therefore not unjustly enriched. We note the trial court did not order back pay but left the matter of damages to be addressed in further proceedings. We see no basis for the District's claim for reimbursement.

## DISPOSITION

The judgment (order) is reversed and the cause remanded to the trial court ith directions to vacate its peremptory writ of mandate and enter a new order denying the petition for a writ of administrative mandamus. The District shall recover its costs on appeal.

Puglia, P. J., and Sparks, J., concurred.