Filed 11/13/14  Palacio v. Peck CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LISA MARIE PALACIO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANDY PECK,<br><br>    Defendant and Appellant. | H038824<br>(Santa Clara County<br>Super. Ct. No. CH004035) |

Defendant Sandy Peck appeals from a civil harassment restraining order prohibiting her from coming within 30 feet of plaintiff Lisa Palacio for a period of three years.  (Code Civ. Proc., § 527.6.)[1]  Peck asserts three challenges to the order:  (1) there is insufficient evidence to establish a course of conduct constituting harassment within the meaning of the civil harassment statute, (2) the injunction improperly bars her from engaging in lawful activity, and (3) the trial court failed to make the necessary findings.

We shall affirm for the reasons stated below.

I.    **BACKGROUND**

Palacio and Peck both worked for the City of Palo Alto as utility customer service representatives between 2005 and 2013.  For much of that time they worked in the same office.  On January 12, 2012, Palacio filed a request for a civil harassment restraining order against Peck, alleging harassment in the workplace.

---

[1] All further unspecified section references are to the Code of Civil Procedure.

The following day the court entered a temporary restraining order requiring Peck to stay 300 yards away from Palacio, as well as Palacio's vehicle, home, and workplace. On February 21, 2012, the court modified the temporary restraining order to require Peck to stay just 30 feet away from Palacio, apparently to accommodate the fact that the two worked in the same office.

The case was tried over the course of four days in April and May 2012.

*Palacio's Testimony*

Palacio testified to four incidents of alleged harassment by Peck.

First, Palacio testified that, in 2008, she was walking past Peck in the office when Peck intentionally rammed her shoulder into Palacio's "like [they were in a] roller derby" and did not apologize.

Second, Palacio testified that, later that year, Peck was singing a children's song and yelled a portion of the song into Palacio's ear as she passed. Another witness testified that she heard Peck singing the song as she walked by the cubicles near Palacio, but did not hear Peck raise her voice.

Third, Palacio testified that Peck used a mirror above her desk to stare at Palacio in an intimidating manner. Palacio placed plants on her desk to block Peck's line of sight.

Finally, Palacio testified that Peck again collided with her intentionally on December 20, 2011. According to Palacio, she was walking down the hall carrying a pitcher of water when she saw Peck coming towards her. Palacio stepped into a doorway to allow Peck to pass. Peck passed through the doorway, lowering her shoulder into Palacio's right shoulder as she passed. Palacio testified that, as a result of the blow, she spilled water on her pants and suffered contusions, a muscle sprain, and shoulder spasms.

Palacio reported the incident to her supervisor, Anthony Enerio, who advised her to get a workers' compensation examination if she was hurt. On Enerio's advice, Palacio went to "U.S. Health Works" for a medical examination within hours of the incident.

2

Palacio also reported the December 2011 incident to the police, who investigated but declined to charge Peck with assault. Palacio testified that she did not feel safe working with Peck after the December 2011 incident.

*Renee Ruiz's Testimony*

Renee Ruiz, one of Peck and Palacio's coworkers, was sitting at her desk when Peck allegedly bumped into Palacio in December 2011. Ruiz recalled that, after the two passed one another, Palacio appeared upset. Ruiz testified that she did not see Peck bump Palacio but that she did not "know if [she] saw them exactly the moment they passed each other because . . . [she] was doing [her] job."

*Leslie Clarkson's Testimony*

Leslie Clarkson, another of Peck and Palacio's coworkers, testified that, in 2010, Peck bumped into her "pretty hard" and did not apologize.

*Robyn Forbes's Testimony*

Robyn Forbes, also a former coworker of Peck's at the City of Palo Alto, testified to a number of incidents involving Peck that left him feeling psychologically threatened. For example, Forbes testified that Peck watched him in a mirror above her desk.

*Peck's Testimony*

Peck testified that she did not recall bumping into Palacio in 2008. She also denied screaming in Palacio's ear. As to the December 2011 incident, Peck testified that she recalled passing by Palacio while Palacio was carrying a pitcher of water, but that she and Palacio did not make physical contact. With respect to Palacio and Forbes's claims that she watched them in a mirror, Peck explained that the mirror was for checking her makeup. Peck recalled brushing into Clarkson accidentally.

On July 30, 2012, the court issued a civil harassment restraining order requiring Peck to stay 30 feet away from Palacio's person, home, workplace, and vehicle until April 2015. Peck timely appealed.

3

While the appeal was pending, on February 12, 2013, the City of Palo Alto informed Peck by letter that her employment would be terminated in 90 days unless the restraining order was lifted, as it effectively barred her from working in the same office with Palacio. On April 15, 2013, Peck moved to modify the restraining order to remove the 30-foot stay away provision. The superior court denied that motion on the ground that it lacked jurisdiction to modify the order given the pending appeal.

This court denied Peck's motion to stay the restraining order pending appeal, which was filed days before her employment was set to be terminated.

## II. DISCUSSION

### A. *Standard of Review*

On appeal, our task is to determine (1) "whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record," (2) whether the facts are legally sufficient to constitute civil harassment under section 527.6, and (3) whether the restraining order passes constitutional muster. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) In determining whether substantial evidence, contradicted or uncontradicted, supports the court's factual findings, "we draw all reasonable inferences from the evidence to support the findings and orders of the [trial] court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Whether the facts, when construed in Palacio's favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review. (*R.D. v. P.M.*, *supra*, at p. 188.)

### B. *Substantive Law Governing Harassment Injunctions*

Section 527.6, subdivision (a) provides that "[a] person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment." Subdivision (b)(3), in turn, defines "harassment" as

4

"unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."

A "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email." (§ 527.6, subd. (b)(1).) "[A] single incident of harassment does not constitute a course of conduct entitling the applicant to injunctive relief." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333.) To constitute harassment, a "course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)

"Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution' . . . by providing expedited injunctive relief to victims of harassment." (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412.) "It does so by providing expedited injunctive relief to victims of harassment." (*Ibid*.) An injunction restraining future conduct is authorized under section 527.6 only when it appears from the evidence that the harassment is likely to recur in the future. (*R.D. v. P.M.*, *supra*, 202 Cal.App.4th at p. 189.) In evaluating the likelihood that the harassment will continue, the court may consider the totality of the circumstances, "including evidence of conduct that might not itself constitute harassment." (*Id*. at pp. 189-190.)

### C.    *The Statute Does Not Require Express Findings by the Trial Court*

We begin by addressing an argument Peck first raises in her reply brief: the trial court failed to make the necessary findings to support the order. That argument is, of

5

course, waived. (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["Arguments presented for the first time in an appellant's reply brief are considered waived."].) It also is meritless. "[T]he [civil harassment] statute does not require a statement of the court's findings of fact, and we have been presented with no other authority requiring such findings." (*Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1112.) "[T]he granting of the injunction itself necessarily implies that the trial court found that [Peck] knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed or harassed [Palacio], and that [Palacio] actually suffered substantial emotional distress. No further express findings are required." (*Ibid.*)

### D. *The Order is Supported by Substantial Evidence*

Peck also argues that there is insufficient evidence of acts constituting a "course of conduct" within the meaning of the harassment statute. At best, she says, there is evidence of a single incident--the December 2011 intentional collision--which is not sufficient to establish a course of conduct.

As an initial matter, we agree with Peck that the incidents involving Clarkson and Forbes cannot be considered in determining whether there was sufficient evidence of a course of conduct constituting harassment. The statute defines "harassment" to include "a knowing and willful course of conduct *directed at a specific person* that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3), italics added.) Because the Clarkson and Forbes incidents were directed at those third parties, and not at Palacio, they do not evince harassment of Palacio by Peck.

Nevertheless, substantial evidence supports the trial court's implied finding that Peck knowingly and willfully engaged in "a pattern of conduct composed of a series of acts over a period of time" designed to harass Palacio. (§ 527.6, subd. (b)(1).) Palacio testified that Peck intentionally ran into her on two occasions, once injuring her; yelled in her ear for no apparent reason; and used a mirror to watch her. Such bizarre and irrational conduct would cause a reasonable person to suffer substantial emotional

6

distress.  And Palacio testified that, in fact, she suffered such distress, explaining that she did not feel safe around Peck and that it was "scary" to think what Peck might do next.

Peck notes that Palacio's testimony was largely uncorroborated, and that some of her testimony was contradicted by other witnesses.  But the trial court evidently believed Palacio, and her testimony alone constitutes substantial evidence supporting the order. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [" 'The testimony of a witness, even the party himself, may be sufficient' " to satisfy the substantial evidence test].)

### E.    The Order is not Overbroad

Peck contends that the order impermissibly bars her from engaging in the lawful activity of continuing to work for the City of Palo Alto.  For that argument, Peck relies on *Nebel v. Sulak* (1999) 73 Cal.App.4th 1363.  But *Nebel* stands for the more narrow proposition that *constitutionally protected activity* may not be enjoined pursuant to section 527.6.  (§ 527.6, subd. (b)(1) ["Constitutionally protected activity is not included within the meaning of 'course of conduct.' "].)  Peck identifies no constitutional right infringed by the order.  (See *Graham v. Kirkwood Meadows Pub. Util. Dist.* (1994) 21 Cal.App.4th 1631, 1643 ["there is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer"].)

### F.    Palacio's Motion for Sanctions

Palacio moved for sanctions against Peck for filing a frivolous appeal.  California Rules of Court, rule 8.276(a), grants this court authority to "impose sanctions . . . on a party . . . for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay . . . ." Section 907 states that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

In *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, the California Supreme Court set forth the standard for determining whether an appeal is frivolous and deserving of sanctions.  The court stated that sanctions "should be used most sparingly to deter only

7

the most egregious conduct." (*Id.* at p. 651.) The court further explained that "[a]n appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*Id.* at p. 650.) Instead, "an appeal should be held to be frivolous only when it is prosecuted for an improper motive--to harass the respondent or delay the effect of an adverse judgment--or when it indisputably has no merit--when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Ibid.*)

Although we have found Peck's appeal in this case to be without merit, we do not consider it frivolous. Nor is there evidence it was brought in bad faith. Therefore, the motion for sanctions is denied.

## III. DISPOSITION

The order is affirmed. Palacio's motion for sanctions is denied. Palacio is entitled to recover her costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.