Opinion
REGAN, J.
In this appeal from a judgment of the trial court denying plaintiffs injunctive and declaratory relief we consider the constitutionality of Government Code section 1029, which prohibits the employment of an ex-felon in any governmental positions classified as peace officers.
Government Code section 1029 reads as follows: “(a) Except as provided in subdivision (b), any person who has been convicted of a felony in this state or any other state, or who has been convicted of any offense in any other state which would have been a felony if committed in this state, is disqualified from holding office or being employed as a peace officer of the state, county, city, city and county or other political subdivision, whether with or without compensation, and is disqualified from any office or employment by the state, county, city, city and county or other political subdivision whether with or without compensation, which confers upon the holder or employee the powers and duties of a peace officer.
“(b) Any person who has been convicted of a felony, other than a felony punishable by death, in this state or any other state, or who has been convicted of any offense in any other state which would have been a felony, other than a felony punishable by death, if committed in this state, and who demonstrates the ability to assist persons in programs of rehabilitation may hold office and be employed as a parole officer of the Department of Corrections or the Department of the Youth Authority if he has been granted a full and unconditional pardon for the felony or offense of which he was convicted. Notwithstanding any other provision of law, the Department of Corrections or the Department of the Youth Authority may refuse to employ any such person as a parole officer regardless of his qualifications.
“(c) Nothing in this section shall be construed to limit or curtail the power or authority of any board of police commissioners, chief of police, sheriff, mayor, or other appointing authority to appoint, employ, or deputize any person as a peace officer in time of disaster caused by flood, fire, pestilence or similar public calamity, or to exercise any power *587 conferred by law to summon assistance in making arrests or preventing the commission of any criminal offense.” (Amended by Stats. 1971, ch. 1616, § 1, p. 3476.)
Plaintiff Hetherington (a white male) was informed in 1975 and in 1976 by defendant Personnel Board that due to his prior unpardoned felony convictions he was ineligible to file an application or take an examination for the positions of parole agent I, group supervisor, or youth counselor with the California Youth Authority. He had been convicted of grand theft in 1963 (Pen. Code, §§ 484, 487) and of issuance of a check without sufficient funds in 1967 (Pen. Code, § 476a). He had been paroled from prison in 1969.[1]
Plaintiff Johnson (a black male) was convicted of grand theft in 1968. He has attempted to obtain employment in a peace officer position but has been, and presently is, dissuaded from doing so by the knowledge of the defendant Personnel Board’s practice, pursuant to Government Code section 1029, of disqualifying all individuals convicted of any felony.
It was also alleged in the complaint that there are over 40,000 positions in the state defined as peace officer positions; that the felony exclusion of section 1029 has a disproportionate adverse impact against blacks, Spanish-sumamed, Asian-Americans and American Indians; and that the exclusion is not reasonably related to the ability to perform the duties of the positions, nor justified by any compelling business purpose.
A proposed first amended complaint, which was denied filing by the superior court, would have added as a plaintiff Paul T. Takagi (an Asian male) and would have added allegations of the number of ex-felons (about 120,000) who were barred from the large number of positions (about 100,000) in the peace officer category. Also there were proposed *588 allegations of the nature of many peace officer positions which indicate they do not require carrying weapons; and that some of the positions, such as parole agents and counselors in the Youth Authority were of a nature such that ex-felons would be particularly well suited to perform. It was also alleged that certain positions in the Youth Authority not closed to ex-felons have duties similar to those defined as peace officers which were closed. Moreover, it was alleged that the federal government and the majority of states do not absolutely prohibit employment of ex-felons in positions similar to those of parole agents, youth counselors and group supervisors employed by the California Youth Authority.
Plaintiffs contend it was error to deny the motion for preliminary injunctive relief, since Government Code section 1029 is unconstitutional as violative of the equal protection clauses of the United States and California Constitutions.
There are two standards of review applied by the courts in equal protection questions. The first or conventional standard requires only that differential treatment of classes of individuals have some “reasonable basis” or bear “. . . ‘ “some rational relationship to a conceivable legitimate state purpose.” ’ ” (Schwalbe v. Jones (1976) 16 Cal.3d 514, 517-518 [128 Cal.Rptr. 321, 546 P.2d 1033]; see also Dandridge v. Williams (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501, 90 S.Ct. 1153].) A second test or standard has been developed to be applied to a classification drawn along lines which renders it “suspect” in constitutional terms or which touches a “fundamental interest.” These are matters such as race or sex rights “ ‘explicitly or implicitly guaranteed by the Constitution.’ ” (See D’Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 17-18 [112 Cal.Rptr. 786, 520 P.2d 10].) In such case strict scrutiny is required and the state bears a burden of establishing that it has a “compelling interest” which justifies the law and that the classification is necessary to further that purpose or interest. (San Antonio School District v. Rodriguez (1973) 411 U.S. 1, 33-34 [36 L.Ed.2d 16, 43, 93 S.Ct. 1278]; D’Amico v. Board of Medical Examiners, supra, 11 Cal.3d at p. 17; Sail’er Inn, Inc. v. Kirby (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)
Plaintiffs contend the classification in Government Code section 1029, based on a criminal record, is a “suspect” classification and that the strict scrutiny, or compelling interest test, should be applied. It is argued by plaintiffs that the broad range of positions encompassed within section 1029- as “peace officers” brings this case within the scope of those *589 occupations called “ ‘the common occupations of the community’ ” as to which there may be a fundamental interest in the right to pursue employment. (See, e.g., Sail’er Inn, Inc. v. Kirby, supra, 5 Cal.3d at p. 17.) We reject his argument. We do not perceive of the various positions encompassed within the term “peace officer” as used in section 1029, applying only to employment by various agencies of government, to be “common occupations of the community.” (See D’Amico v. Board of Medical Examiners, supra, 11 Cal.3d at p. 18; cf. People v. Ryser (1974) 40 Cal.App.3d 1, 6-8 [114 Cal.Rptr. 668].) We know of no explicit or implicit constitutional guarantee of a right to a job with any governmental agency. (See Townsend v. County of Los Angeles (1975) 49 Cal.App.3d 263, 267 [122 Cal.Rptr. 500].) Nor do we consider peace officer positions to be a “major sector of the economy” as claimed by plaintiffs. Even if it could be legitimately said that such positions constitute a major sector of the economy this has never been held to be a critical factor, as such, calling for application of the strict standard test of equal protection.
In short, contrary to plaintiffs’ arguments, ex-felons, considered in their posture of exclusion from peace officer employment by section 1029, do not fall within any classification recognized by the courts as “suspect.” The alleged discrimination in the complaint does not rise to the level established by court decisions, of discrimination based on sex, race or lineage, or discrimination depriving persons of rights explicitly guaranteed by either the United States or California Constitutions under the equal protection of the laws concept.
It is also urged that the strict scrutiny or compelling interest test should be applied on the basis of race and poverty, due to the asserted fact that racial and ethnic minorities comprise membership in the class of ex-felons at a rate considerably disproportionate to their representation in the adult population of California. Assuming the statute affects a disproportionate percentage of the total minority or ethnic population it would also have to be established that there is a statutorily significant percentage correlation or relationship. We cannot infer such a correlation or relationship and none was alleged in the complaint. In fact, this entire constitutional theory advanced by amicus based on race was not presented below, nor was there any allegation as to an impact of the statute based upon poverty. We find no sound basis upon which to examine into the constitutionality of the statute in question except with respect to the ex-felon category, per se.
*590 Under the rational basis standard or test, the burden is upon the plaintiffs to show that the statute before us bears no rational relationship to a legitimate state purpose. (McDonald v. Board of Election (1969) 394 U.S. 802, 808-809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]; Dandridge v. Williams, supra, 397 U.S. at p. 485 [25 L.Ed.2d at p. 501]; Schwalbe v. Jones, supra, 16 Cal.3d at pp. 517-518.) Neither plaintiffs nor amicus has made such a showing.
In our opinion, the statute on its face bears a rational relationship to a legitimate state purpose. That purpose is to assure, insofar as possible, the good character and integrity of peace officers and to avoid any appearance to members of the public that persons holding public positions having the status of peace officers may be untrustworthy. Courts have frequently recognized such a purpose as to qualifications for various positions or employment important to the public interest. For example, in De Veau v. Braisted (1960) 363 U.S. 144, 158-159 [4 L.Ed.2d 1109, 1119-1120, 80 S.Ct. 1146], the United States Supreme Court upheld a New York statute which, in effect, barred ex-felons from holding office in waterfront labor unions whose members were registered or licensed under the New York Waterfront Commission Act. The court stated, inter alia, that “barring convicted felons from certain employments is a familiar legislative device to assure against corruption . . . .” (Ibid.) The court referred to a large group of federal statutes which disqualify persons from holding any officé of honor, trust or profit'under the United States, because of their conviction of crimes. The court also pointed to the fact, with approval, that “State provisions disqualifying convicted felons from certain employments important to the public interest also have a long history.” (Id., at p. 159 [4 L.Ed.2d at p. 1120].)
In California, our courts have recognized the special position of peace officers in society, with emphasis on public trust and confidence. Thus, in McCain v. Sheridan (1958) 160 Cal.App.2d 174, 177 [324 P.2d 923], it was said with reference to members of the police force, in general, “they can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement.”
Plaintiffs have laid much stress upon the fact that the term “peace officers,” as used in Government Code section 1029, includes many other job categories than police or strictly law enforcement personnel. For example, it includes parole agents and certain youth counselors and group supervisors. They argue that in some cases ex-felons make better or *591 more effective employees in these categories than do those never convicted of a crime. Even assuming this to be true, it is not the test we must apply to the constitutionality of the statute before us. The Legislature has, in fact, recognized in the statute itself that when an ex-felon has shown such rehabilitation as to warrant a pardon, he may be eligible for employment as a parole officer (§ 1029, subd. (b)). Absent such a pardon, the legislative purpose is clear and the statute is rationally related thereto. The postulate of the Attorney General is that the trust and confidence of the general run of law-abiding citizens of this state in their parole officers, prison guards, probation officers, parole agents, youth counselors, group supervisors or any of the other employees the Legislature has seen fit to designate as “peace officers,” could be seriously weakened if ex-felons were hired. In our view this postulate is unassailable. With particular reference to the field of juvenile or youth crime and delinquency which is of interest to plaintiffs, the courts are especially solicitous of the character of an officer “who, in dealing with juvenile delinquents, must inculcate and foster respect for parental, school and other legal authority . . . .” (See Johnson v. County of Santa Clara (1973) 31 Cal.App.3d 26, 34 [106 Cal.Rptr. 862].)
Police officers, as such, hold a “peculiar and delicate position” in society. (Frazee v. Civil Service Board (1959) 170 Cal.App.2d 333, 335 [338 P.2d 943].) The determination of what governmental positions, other than police as such, are to be categorized as peace officers, is a legislative matter. The inclusion of various public occupations, assuming reasonableness or rationality, is a policy matter to be pursued through legislative channels.
In summary, we are in complete accord with the views expressed by the United States Court of Appeals in the case of Upshaw v. McNamara (1st Cir. 1970) 435 F.2d 1188, wherein that court upheld a Massachusetts statute essentially similar to that before us. That court held, first, that a classification based on a criminal record is not a suspect classification. Also, that the rationale for not hiring a person to a police position who has been convicted of a felony is easily seen, since he might be “thought to lack the qualities of self control or honesty that his sensitive job requires.” (Id, at p. 1190.) We have no problem in applying such rationale to occupations which the Legislature has seen fit to designate as peace officers, in addition to policemen as such.
We find no violation of equal protection of laws in Government Code section 1029, either on its face or as it has been applied in this case.
*592 Plaintiffs contend section 1029 violates due process of law, there being no direct relationship between conviction of any felony at any time and the qualifications necessaiy to engage in the numerous positions affected by section 1029. Plaintiffs also contend section 1029 creates a conclusive presumption violative of due process, because it affects an important right, presumes facts which are not universally true, and the state has alternative means available to determine the truth of the presumed facts. These contentions are tenuous at best.
It is true in general that a person cannot be removed from or denied government employment because of factors totally unconnected with the responsibilities of that employment. (See Morrison v. State Board of Education (1969) 1 Cal.3d 214, 234 [82 Cal.Rptr. 175, 461 P.2d 375]; Vielehr v. State Personnel Bd. (1973) 32 Cal.App.3d 187, 192 [107 Cal.Rptr. 852].) In like vein, some federal cases have held that there must be some reasonably foreseeable specific connection between the disqualifying quality or conduct of an individual and the efficiency of the public service. (Mindel v. United States Civil Service Commission (N.D.Cal. 1970) 312 F.Supp. 485, 488; Norton v. Macy (D.C.Cir. 1969) 417 F.2d 1161, 1164; Society for Individual Rights, Inc. v. Hampton (N.D.Cal. 1973) 63 F.R.D. 399, 401.) But we are not dealing here with a disqualifying factor unconnected with the responsibilities of the prospective employment or the efficiency of the public service. We have pointed out sufficiently above that there is a reasonably foreseeable specific connection between the status of being an ex-felon and the responsibilities connected with, and efficiency necessary to, the status or position of a peace officer, as defined by the Legislature. (Cf. Pettit v. State Board of Education (1973) 10 Cal.3d 29, 36 [109 Cal.Rptr. 665, 513 P.2d 889, 78 A.L.R.3d 1].)
Plaintiffs contend due process is violated by section 1029 since it assertedly presumes facts which are not universally true, i.e., “unfitness” to hold a peace officer position, and the state has alternative means to determine the truth of the presumption. This contention is meritless.
Plaintiffs rely on a line of decisions holding under certain circumstances that a conclusive presumption violates due process if (a) the presumed facts are not universally true; (b) reasonable alternative means exist to determine actual facts; and (c) the presumption affects an important right or one enjoying constitutionally protected status. (See, e.g., Vlandis v. Kline (1973) 412 U.S. 441, 452 [37 L.Ed.2d 63, 71, 93 S.Ct. 2230]; Turner v. Dept. of Employment Security (1975) 423 U.S. 44, 46-47 *593 [46 L.Ed.2d 181, 183-184, 96 S.Ct. 249]; In re Lisa (1975) 13 Cal.3d 636, 647-651 [119 Cal.Rptr. 475, 532 P.2d 123].)
As we have indicated above, the “presumption,” if such it be considered, in Government Code section 1029, by disqualifying an ex-felon from holding a government position as a peace officer does not affect any right at all. It merely affects a privilege of governmental employment which may be withheld where, as here, there is no arbitrary classification involved in the qualifications, such as would violate the equal protection clauses of the United States or California Constitutions. (See discussion in Weinberger v. Salfi (1975) 422 U.S. 749, 767-777 [45 L.Ed.2d 522, 539-546, 95 S.Ct. 2457].)
Moreover, it must be emphasized that the statute is not pointed solely at unfitness or competence in the sense of being capable or able to do the job, but it is pointed at, and molded by, consideration of other factors. These include such things, implicit in the nature of the subject matter of the legislation, as public faith and confidence in peace officers, morale amongst the ranks of peace officers, problems of ex-felons carrying firearms, and the like.
We find no violation of due process of law in Government Code section 1029, either on its face or as applied in this case.
Plaintiffs contend that Government Code section 1029 “violates” certain state and federal statutes. It is contended that Government Code section 1029 violates Labor Code section 1420 and Government Code sections 19702.1 and 19702.2, which in essence collectively guarantee what are generally called equal employment opportunities. It is argued by plaintiffs that the operation of section 1029 results in exclusion of a disproportionate percentage of minorities, not justified as a business practice. These arguments are specious. In the first place, one statute does not “violate” another; it may be in conflict, however. In that event it is a long-standing rule of statutory construction that a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. (See Civ. Code, § 3534; Wilson v. Board of Retirement (1957) 156 Cal.App.2d 195, 211 [319 P.2d 426].) Moreover, we see no conflict between the statutes. The state equal employment opportunity laws to which plaintiffs refer prohibit discrimination in employment based on race, religious creed, color, national origin, ancestry, physical *594 handicap, medical condition, marital status or sex, or the use of education prerequisites or testing or evaluation methods which are not job related. The status of being an ex-felon has nothing to do with such equal opportunity laws.
Turning to the federal law, in the employment practices provisions, of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) it is provided essentially that if an employment practice has a disproportionate adverse effect against any group in terms of race, color, religion, sex or national origin, such employment practice (such as a test or standard) is unlawful, unless it can be shown to be related to job performance. (See 42 U.S.C. § 2000e-2; Griggs v. Duke Power Co. (1971) 401 U.S. 424, 430-431 [28 L.Ed.2d 158, 163-164, 91 S.Ct. 849].) Under these federal statutes, it has been held that an absolute ban from employment in any position, of any person convicted of any crime other than a minor traffic offense, is unlawful where such practice had a disparate impact against blacks and where there is no showing that the employment standard was related to job performance, or justified in terms of “business necessity.” (Green v. Missouri Pacific Railroad Company (8th Cir. 1975) 523 F.2d 1290, 1295.)
However, where the employer has shown that criminal conduct does bear a relationship to the duties of a particular occupation, such standards have been sustained. In Richardson v. Hotel Corporation of America (E.D.La. 1971) 332 F.Supp. 519, a hotel bellman was properly discharged because of a prior conviction of theft, regardless of racial impact. (See also Lane v. Inman (5th Cir. 1975) 509 F.2d 184 (taxi driver, narcotic traffic).) In United States v. City of Chicago (N.D.Ill. 1976) 411 F.Supp. 218, 235, the court said: “[W]e agree that a prior conviction of a serious offense would be a valid ground to disqualify a person from police work. And this would be so regardless of the disproportionate racial impact such a standard might have.”
We hold that in the case before us there is a clear relationship or nexus between conviction of a felony and performance of the duties of peace officers in general and that such relationship exists with specific reference to the particular peace officer positions involved in this case. The federal equal employment opportunities statutes (42 U.S.C. § 2000e et seq.) are not violated.
Plaintiffs contend Government Code section 1029 violates 29 United States Code sections 801 and 845, being portions of the statutes known as the Comprehensive Employment and Training Act (29 U.S.C. *595 § 801 et seq.) which provides programs for job training and employment opportunities for economically disadvantaged, unemployed and underemployed persons at federal, state and local levels. (§ 801.)
It is provided in section 845, inter alia, that programs seeking federal financial assistance shall include provisions for assurances that the program will, to the maximum extent feasible, contribute to elimination of artificial barriers to employment and occupational advancement, including civil service requirements which restrict employment opportunities for the disadvantaged.
We can see in Government Code section 1029 no possible violation of the specific provisions of the federal Comprehensive Employment and Training Act referred to above or of any other provisions of that act. The act is a federal aid program and the conditions it imposes are simply conditions precedent to receipt of federal monies.
We find nothing in the federal act which compels the state or any local agency to hire statutorily unqualified peace officers.
In any event, the Comprehensive Employment and Training Act contains no provision which purports to regulate employment practices, except as a prerequisite to the receipt of federal funds for a particular public service employment program. The act confers no right of action in a prospective employee.
We do not reach the question presented by the alleged granting of an executive pardon to plaintiff Hetherington. This event, mentioned only in plaintiffs’ opening brief, occurred after the commencement of the action and is not a matter of record.
The judgment is affirmed.
Puglia, P. J., concurred.

Hetherington had recently worked for the Youth Authority under the Work Incentive Program (WIN) and under the Comprehensive Employment and Training Act as a trainee group supervisor and parole aide. Various officials had recommended he receive a pardon from the Governor. The Superior Court of Sacramento County had granted him a certificate of rehabilitation in March 1974 and the California Supreme Court had recommended to the Governor his pardon be granted. At the time of this lawsuit the Governor had not acted, but plaintiff Hetherington was granted a pardon by the Governor after this appeal was filed. Therefore the issues raised in the amended complaint relating to delays and failure of the Governor to act on the pardon have expressly been excluded by plaintiff Hetherington from this appeal. It was further alleged that Hetherington is a resident of the County of Sacramento who was assessed for and, within the year immediately preceding the filing of the complaint, did pay a tax to the County and to the State of California; and that the State Personnel Board has expended and will expend public time and funds enforcing Government Code section 1029.