[No. B075024. Second Dist., Div. Five. Aug. 4, 1994.]

LEO F. KENNEALLY et al., Plaintiffs and Respondents, v.
MEDICAL BOARD OF CALIFORNIA et al., Defendants and Appellants.

490

**COUNSEL**

Daniel E. Lungren, Attorney General, Calvin W. Torrance and Adrian K. Panton, Deputy Attorneys General, for Defendants and Appellants.

Fleishman, Fisher & Moest and Stanley Fleishman for Plaintiffs and Respondents.

## OPINION

GRIGNON, J.—The Medical Board of California[1] appeals from a preliminary injunction staying a physician disciplinary hearing until the physician has the opportunity to conduct certain prehearing depositions. The physician contends Government Code, section 11511, part of the Administrative Procedure Act (Gov. Code § 11340 et seq.), denies him equal protection by restricting prehearing depositions in physician disciplinary proceedings to those witnesses whose testimony is material and who are unable or cannot be compelled to attend the hearing, when such depositions are not similarly restricted in attorney disciplinary proceedings. We conclude a physician has no fundamental right, for equal protection purposes, to continue to practice his or her profession. Accordingly, in reviewing the challenged statute, we apply the "rational basis" test rather than the "strict scrutiny" test. Finding Government Code section 11511 to be rationally based, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

In April 1990, the Board filed an accusation charging Leo F. Kenneally, M.D., with gross negligence and incompetence in performing abortions on six patients, three of whom died. The accusation also charged that Dr. Kenneally's failure to use general anesthetics and to have intravenous lines available when conducting second trimester abortions fell below the standard of care. The disciplinary hearing was set for October 1991. In October 1991, Dr. Kenneally filed an action in the United States District Court for the Central District of California alleging the Board's action was brought in bad faith, for purposes of harassment and as the result of bias. The disciplinary hearing was stayed. The district court dismissed the action, based upon the abstention doctrine of *Younger* v. *Harris* (1971) 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746]. Dr. Kenneally appealed and the Ninth Circuit affirmed the decision. (*Kenneally* v. *Lungren* (9th Cir. 1992) 967 F.2d 329.) The stay of the disciplinary hearing was lifted.

The disciplinary hearing was rescheduled for April 1993. In February 1993, two supplemental accusations were filed by the Board charging Dr. Kenneally with gross negligence and incompetence in the performance of abortions on two additional patients. Also in February 1993, Dr. Kenneally noticed the depositions of the Board's two expert witnesses, the seven

---

[1]Appellants are the Medical Board of California, Dixon Arnett, executive director of the board, and Attorney General Daniel E. Lungren. For ease of reference, we refer to appellants as the Board.

members of the Board, the Board's investigator and Jeannette Drisbach, the director of an independent organization called "Woman's Advocate." The Board informed Dr. Kenneally by letter that the depositions he requested were not authorized pursuant to the Administrative Procedure Act.

In April 1993, Dr. Kenneally filed a complaint for declaratory and injunctive relief in the superior court.[2] In the complaint, Dr. Kenneally alleged that the "procedures for revoking or suspending a doctor's license violate . . . equal protection provisions of the Fourteenth Amendment to the United States Constitution and article I, section 7, of the California Constitution. Although doctors and lawyers facing disciplinary proceedings are identically situated, they are not treated similarly and doctors are denied crucial rights available to similarly situated lawyers. [¶] a. A lawyer facing disciplinary proceedings may avail himself of the Civil Discovery Act, including the right to take depositions prior to the disciplinary hearing. By contrast, doctors facing disciplinary proceedings may not depose witnesses prior to the hearing. [Gov. Code, § 11511.]"[3]

The parties stipulated to the issuance of an order to show cause for a preliminary injunction to enable the trial court to consider whether the disciplinary hearing should be stayed until Dr. Kenneally had the opportunity to take the depositions he requested. After a hearing, the trial court issued the preliminary injunction. The trial court found that "Government Code section 11511 on its face and as applied to [Dr. Kenneally] denied him the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution and by article I, section 7 of the California Constitution, because the section denies him the right to take pre-administrative hearing depositions, while lawyers who face license revocation proceedings are accorded such a right."

The Board filed a petition for writ of mandate with this court which we denied because an adequate remedy by appeal existed. In May 1993, the Board filed a petition for writ of supersedeas and request for stay. On May 4, 1993, we issued a temporary stay of the preliminary injunction and expressly stated that the disciplinary hearing, set for May 6, 1993, was not stayed. After Dr. Kenneally's opposition to our temporary stay order was considered, we continued the temporary stay order. The petition for writ of

[2]The complaint was also filed by Antoinette Stuckey, whose daughter obtained an abortion from Dr. Kenneally. Stuckey also appears as respondent in this matter.

[3]Dr. Kenneally's complaint raised other arguments, including that the physician disciplinary procedures unconstitutionally vest the Board with judicial powers, deny due process and violate equal protection as applied to Dr. Kenneally. These arguments are not before us on appeal.

supersedeas was granted on July 15, 1993. The Board appealed from the preliminary injunction.

## DISCUSSION

Dr. Kenneally argues Government Code section 11511 must be reviewed under strict scrutiny analysis for equal protection purposes, based on his contention that his right to continue to practice his licensed profession is fundamental. The Board contends the right is not fundamental and the statute need only be rationally based. We first determine the appropriate standard of review and then review the statute under that standard.

### Standard of Review

■ "[T]he equal protection clause requires that those similarly situated not be treated differently unless the disparity is justified." (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 914 [13 Cal.Rptr.2d 245, 838 P.2d 1198].) The Fourteenth Amendment's guarantee of equal protection and the California Constitution's protection of the same right (Cal. Const., art. I, § 7, subd. (a), art. IV, § 16, subd. (a)) are substantially equivalent and are analyzed in a similar fashion. (*In re Demergian* (1989) 48 Cal.3d 284, 291-292 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 324 [248 Cal.Rptr. 704].)

■ In considering an equal protection challenge, "we must first determine the appropriate standard of review. [Citation.] The proper standard of review, as developed by the high court, depends upon the classification involved in, and interests affected by, the challenged law." (*Bowens* v. *Superior Court* (1991) 1 Cal.4th 36, 42 [2 Cal.Rptr.2d 376, 820 P.2d 600].) The traditional approach involves two tiers.[4] "The challenged law will be subject to strict scrutiny only if it operates to the peculiar disadvantage of a

---

[4]In some situations, the United States Supreme Court appears to have applied an "intermediate standard of review that is not as difficult for the government to meet as the compelling interest test, but which involves far less deference to the legislature than does the rationality test. Under the intermediate standard of review, the justices will not uphold a classification unless they find that the classification has a 'substantial relationship' to an 'important' government interest. The Supreme Court has used this intermediate standard of review in cases involving gender classifications and cases involving illegitimacy classifications." (3 Rotunda & Nowak, Treatise on Constitutional Law (2d ed. 1992) § 18.3, p. 17; see also *Woods* v. *Holy Cross Hospital* (5th Cir. 1979) 591 F.2d 1164, 1172-1173.) No party contends intermediate scrutiny should be utilized in this case.

suspect class [citation] or impinges on a fundamental right [citation]." (*Ibid.*; *Board of Supervisors* v. *Local Agency Formation Com.*, *supra*, 3 Cal.4th at p. 913.) "Under this very severe standard, a discriminatory law will not be given effect unless its classification bears a close relation to the promoting of a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means possible." (*Board of Supervisors* v. *Local Agency Formation Com.*, *supra*, 3 Cal.4th at p. 913.)

Recognizing it is the Legislature's responsibility to draw distinctions between groups, and the lines can rarely be precisely drawn, courts generally apply the rational basis test to most legislation. The rational basis test is routinely applied in areas of economic regulation. (*Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 417 [205 Cal.Rptr. 576].) "The 'standard formulation of the test for minimum rationality' [citation] is whether the classification is 'rationally related to a legitimate governmental purpose.' [Citation.] Put another way, the classification must bear some fair relationship to a legitimate public purpose." (*Board of Supervisors* v. *Local Agency Formation Com.*, *supra*, 3 Cal.4th at p. 913.)

 Here, neither Dr. Kenneally in particular, nor licensed physicians in general, belong to a suspect class.[5] Additionally, there is no fundamental right to a prehearing deposition. (*Stevenson* v. *State Bd. of Medical Examiners* (1970) 10 Cal.App.3d 433, 440 [88 Cal.Rptr. 815].) Rather, the issue is whether Dr. Kenneally has a fundamental right to continue to practice his licensed profession.

"As to the assertion of a right to continued employment, there is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer." (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.* (1994) 21 Cal.App.4th 1631, 1643-1644 [26 Cal.Rptr.2d 793] [residence requirements for public utility employees]; *Rittenband* v. *Cory*, *supra*, 159 Cal.App.3d 410 [mandatory retirement age for judge]; *Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 549 [173 Cal.Rptr. 539] [mandatory retirement age for college professor]; *Hetherington* v. *State Personnel Bd.* (1978) 82 Cal.App.3d 582,

---

[5]"The determination of whether a suspect class exists focuses on whether '[t]he system of alleged discrimination and the class it defines have [any] of the traditional indicia of suspectness: [such as a class] saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " (*Bowens* v. *Superior Court*, *supra*, 1 Cal.4th at p. 42; *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313 [49 L.Ed.2d 520, 524-525, 96 S.Ct. 2562].) Suspect classes include race and alienage. (*Woods* v. *Holy Cross Hospital*, *supra*, 591 F.2d at p. 1173, fn. 16.)

589 [147 Cal.Rptr. 300] [prohibition against employment of ex-felons as peace officers].)[6]

Nor is there a distinction for equal protection purposes between the obtaining of a professional license and the maintaining of that license. (*Board of Medical Quality Assurance* v. *Superior Court* (1980) 114 Cal.App.3d 272, 277 [170 Cal.Rptr. 468].) ■ "No person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to legislative control under the police powers." (*Gregory* v. *Hecke* (1925) 73 Cal.App. 268, 283 [238 P. 787].) "[T]o the extent the license is subject to the state's police power, it is not vested." (*Stroh* v. *Midway Restaurant Systems, Inc.* (1986) 180 Cal.App.3d 1040, 1052 [226 Cal.Rptr. 153]; accord, *Murrill* v. *State Board of Accountancy* (1950) 97 Cal.App.2d 709, 711-712 [218 P.2d 569].)[7]

■ Language from cases that discuss a trial court's independent review of administrative proceedings on mandamus does not compel the conclusion an individual has a fundamental right for equal protection purposes to his occupation. In this situation, the courts have called one's occupation "fundamental."[8] However, our Supreme Court has made it clear that there is a distinction between an interest which is "fundamental," such that one

---

[6]Accord, *Lupert* v. *California State Bar* (9th Cir. 1985) 761 F.2d 1325, 1327, footnote 2 ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection Clause. . . ."); *Brandwein* v. *California Bd. of Osteopathic Ex'rs* (9th Cir. 1983) 708 F.2d 1466; *Massachusetts Bd. of Retirement* v. *Murgia, supra,* 427 U.S. at page 313 [49 L.Ed.2d at page 524] ("we have expressly stated that a standard less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities' "); *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10] ("The conventional 'rational relationship' test is traditionally applied in cases involving occupational licensing, including those concerning the practice of the healing arts."), limited on other grounds in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 944 [154 Cal.Rptr. 503, 593 P.2d 200].

[7]Legislation involving the employment rights of a suspect class is subject to strict scrutiny review. (*Kubik* v. *Scripps College, supra,* 118 Cal.App.3d at pp. 549-550 and cases cited therein; e.g., *Hampton* v. *Mow Sun Wong* (1976) 426 U.S. 88 [48 L.Ed.2d 495, 96 S.Ct. 1895]; *Truax* v. *Raich* (1915) 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7].)

[8]For example, in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], the Supreme Court was called upon to determine if the substantial evidence or independent review standard was to be applied in reviewing a decision of the Commissioner of Corporations. In examining the issue, the Supreme Court stated at pages 144-145 and in the accompanying footnote: "In determining whether the right is fundamental [such that an independent review is necessary] the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession.[12]" The Supreme Court's accompanying footnote 12 provides in pertinent part: ". . . 'The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection.' [Citation.] In *Meyer* v. *Nebraska* (1923) 262

receives independent judicial review after a disciplinary hearing and one which is "fundamental," such that strict scrutiny is applied for equal protection analysis.

In *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr. 891, 657 P.2d 383], the Supreme Court found a right to a driver's license to be "fundamental" such that an administrative decision relating to the license deserved independent judicial review, but not fundamental such that in an equal protection analysis, strict scrutiny was to be applied. " '[T]he standard of review question with which [the administrative review] cases deal *relates to the appropriate relationship between administrative and judicial adjudicatory decisions,* and does not concern the constitutional legitimacy or validity of legislative policy judgments at all. Thus, . . . the "fundamental right" category does not identify areas in which substantive legislative judgments are in any manner constitutionally suspect or justify unusual judicial scrutiny; rather, that category simply encompasses those quasi-judicial administrative decisions that have "an impact on the individual 'sufficiently vital . . . to compel a full and independent review' by the court." [Citation.] [¶] Indeed, even a cursory review of the [administrative review] line of decisions makes it abundantly clear that the applicability of the independent judgment standard of review does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review.' " (*Id.* at pp. 396-397, italics in original; accord, *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 81, fn. 12, 82-85 [177 Cal.Rptr. 566, 634 P.2d 917].) "The Supreme Court cautioned against any 'blurring of two separate and distinct senses in which the term "fundamental" is used. . . .' " (*Graham* v. *Kirkwood Meadows Pub. Util. Dist., supra,* 21 Cal.App.4th at p. 1643.)[9]

We conclude Dr. Kenneally's right to continue to practice his licensed profession is not a fundamental right for equal protection purposes. Accordingly, in evaluating whether the prehearing deposition provision of Government Code section 11511 denies Dr. Kenneally equal protection, we apply the rational basis test.

---

U.S. 390, 399 . . . , the United States Supreme Court listed the right of the individual 'to engage in any of the common occupations of life' as one of several fundamental liberties . . . .' " (Accord, *Frink* v. *Prod* (1982) 31 Cal.3d 166, 174-175 [181 Cal.Rptr. 893, 643 P.2d 476].)

[9] *Ettinger* v. *Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853 [185 Cal.Rptr. 601] held that a clear and convincing burden of proof should be applied to physician disciplinary hearings. In so holding, *Ettinger* noted that the same burden of proof is applied in attorney disciplinary proceedings. *Ettinger* did not involve an equal protection attack on a legislative enactment.

*Government Code Section 11511*

■ Dr. Kenneally contends he was denied equal protection because he was not afforded the same prehearing depositions in his physician disciplinary proceeding as lawyers are afforded in attorney disciplinary proceedings. The system established to discipline lawyers incorporates the Civil Discovery Act, thus allowing prehearing depositions.[10] In contrast, proceedings for other professions, including physicians, are conducted under the Administrative Procedure Act. (Gov. Code, § 11340 et seq., § 11500 et seq.; Bus. & Prof. Code, § 2230.) Under the Administrative Procedure Act, a physician may request the names of witnesses, obtain statements and reports, including investigative reports (Gov. Code, § 11507.6), and may take certain prehearing depositions as specified in Government Code section 11511. Government Code section 11511 permits the taking of depositions, but limits their availability to witnesses whose testimony is material and who are unable or cannot be compelled to attend.[11]

■ States are granted the power to regulate professions. (*Gregory* v. *Hecke, supra,* 73 Cal.App. at p. 283.) The state may regulate different professions differently. It may resolve identical problems with respect to different professions at the same time in the same manner, or determine to regulate different professions differently. (*Naismith Dental Corp.* v. *Board of Dental Examiners* (1977) 68 Cal.App.3d 253, 262 [137 Cal.Rptr. 133].) In evaluating professional disciplinary systems an appellate court does not sit as a super-legislature. (*Id.* at p. 263.) Great deference to legislative judgment should be accorded. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 18.)

■ Under the rational basis test, " 'the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational

---

[10]Rule 315, Transitional Rules of Procedure of the State Bar of California states, "The Civil Discovery Act (commencing with Section 2016 of the Code of Civil Procedure) as amended from time to time, and as limited or adopted by these rules, applies in formal proceedings."

[11]Government Code section 11511 reads: "On verified petition of any party, an agency may order that the testimony of any material witness residing within or without the State be taken by deposition in the manner prescribed by law for depositions in civil actions. The petition shall set forth the nature of the pending proceeding; the name and address of the witness whose testimony is desired; a showing of the materiality of his testimony; a showing that the witness will be unable or can not be compelled to attend; and shall request an order requiring the witness to appear and testify before an officer named in the petition for that purpose. Where the witness resides outside the State and where the agency has ordered the taking of his testimony by deposition, the agency shall obtain an order of court to that effect by filing a petition therefor in the superior court in Sacramento County. The proceedings thereon shall be in accordance with the provisions of Section 11189 of the Government Code."

doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.'" (*In re Demergian, supra,* 48 Cal.3d at p. 292; *Vance* v. *Bradley* (1979) 440 U.S. 93, 97 [59 L.Ed.2d 171, 176, 99 S.Ct. 939].) "The burden of demonstrating the irrationality of the statute rests on [the party assailing it] and it will not be set aside if any basis reasonably may be conceived to justify it. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d [at p.] 17.)" (*Kubik* v. *Scripps College, supra,* 118 Cal.App.3d at p. 552.) "In general, the [United States Supreme] Court has been especially deferential to legislative classifications in cases of challenges to the state regulation of licensed professions." (*Brandwein* v. *California Bd. of Osteopathic Ex'rs, supra,* 708 F.2d at p. 1470.)

 Our Legislature has adopted an exclusive and comprehensive scheme governing depositions and other discovery in administrative proceedings, including disciplinary proceedings. (Gov. Code, § 11507.5.) The taking of depositions in these proceedings is restricted in order to prevent undue delay and expedite the proceedings. (Judicial Council of Cal., 10th Biennial Rep. (1944) pp. 18-19.) Under the Administrative Procedure Act, parties are permitted to discover all written or recorded statements of another party's witnesses. (Gov. Code, § 11507.6.) Further, depositions are available to preserve the testimony of material unavailable witnesses. (Gov. Code, § 11511.) Thus, under the Administrative Procedure Act, substantial discovery is afforded in disciplinary proceedings.

In addition to delay prevention, the restricted use of depositions reduces the overall cost of disciplinary proceedings for all parties. The discovery limitations permit scarce taxpayer resources to be devoted to the investigation and prosecution of more cases. Fewer cases could be processed if extensive depositions were permitted in each case. (Cf. *Bowens* v. *Superior Court, supra,* 1 Cal.4th at p. 43.)

These dual purposes of streamlining and reducing the cost of disciplinary proceedings in general obtain even greater importance in the context of physician disciplinary hearings. The medical profession is technically complex and is intertwined in an intimate relationship with the public interest and welfare. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 18.) The work of physicians has life and death consequences for their patients. Negligent or incompetent physicians endanger the physical and mental health and lives of their patients. There is no profession in which it is

more critical that errant practitioners be swiftly and expeditiously identified and disciplined.[12]

Dr. Kenneally does not seriously contend that the deposition restrictions applicable to physicians are inherently irrational, as it is apparent that the overall discovery procedures available in physician disciplinary proceedings are rationally based. Rather, Dr. Kenneally merely asserts that attorneys have the right to broader discovery than do physicians and that this distinction is irrational. This contention must be rejected.

First, as we have previously pointed out, the Legislature is free to eliminate problems as to one profession without being required to treat all professions identically. Second, the legal profession is not similar to other professions with regard to the imposition of regulations. Unlike other professions, as officers of the court, attorneys have public duties and responsibilities and are ultimately regulated by the Supreme Court. (*Cohen* v. *Hurley* (1961) 366 U.S. 117, 123-124 [6 L.Ed.2d 156, 161-162, 81 S.Ct. 954], overruled on other grounds in *Spevack* v. *Klein* (1967) 385 U.S. 511 [17 L.Ed.2d 574, 87 S.Ct. 625]; *Cammer* v. *United States* (1956) 350 U.S. 399, 405 [100 L.Ed. 474, 478-479, 76 S.Ct. 456]; *Keller* v. *State Bar* (1989) 47 Cal.3d 1152, 1160-1161 [255 Cal.Rptr. 542, 767 P.2d 1020], overruled on other grounds in *Keller* v. *State Bar of California* (1990) 496 U.S. 1 [110 L.Ed.2d 1, 110 S.Ct. 2228]; *Jacobs* v. *State Bar* (1977) 20 Cal.3d 191, 196 [141 Cal.Rptr. 812, 570 P.2d 1230].) Attorney admission and discipline are judicial functions. An exclusive system has been established to admit, regulate and discipline attorneys, including a State Bar, a separate State Bar prosecutorial system and a State Bar Court with its own review department and rules of procedure, all under the auspices of the Supreme Court. (Bus. & Prof. Code, § 6000 et seq.; Cal. Rules of Court, rule 950 et seq.; *Keller* v. *State Bar*, *supra*, 47 Cal.3d at pp. 1159-1163.) The historical position of the legal profession, and the fact that its regulatory system is controlled by the Supreme Court, make it unlike other professions. Finally, physicians have a far greater and immediate impact on the health and life of those they serve than do attorneys. Thus, reduction of delay is more imperative in physician disciplinary proceedings than in attorney disciplinary proceedings.

The discovery legislation concerning physician disciplinary proceedings is presumed valid and will not be found unconstitutional unless it is not rationally related to a legitimate governmental purpose. Here, the limitation on depositions is rationally related to the governmental purposes of reducing

---

[12]Business and Professions Code section 125.5 permits the Board to seek immediate prohibitive relief through an injunction or other appropriate order restraining a physician from violating the code.

delay and costs in physician disciplinary proceedings. We hold that Government Code section 11511 does not violate a physician's constitutional right to equal protection of the laws.

## DISPOSITION

The order issuing a preliminary injunction is reversed. Respondents shall bear appellants' costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied August 23, 1994, and respondents' petition for review by the Supreme Court was denied October 13, 1994.