TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-306 |
| of | : | |
| | : | July 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE STEVE BALDWIN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Do California statutes specifying accreditation by the Western Association of Schools and Colleges, or other regional accrediting organizations, unlawfully discriminate against alternative accreditation agencies?

CONCLUSION

California statutes specifying accreditation by the Western Association of Schools and Colleges, or other regional accrediting organizations, do not unlawfully discriminate against alternative accreditation agencies.

ANALYSIS

A number of California statutes specify accreditation by the Western Association of Schools and Colleges ("WASC") or other regional accrediting organizations for various purposes involving institutions of higher education. For example, a clinical laboratory bioanalyst must have obtained his education from an institution maintaining standards equivalent to those institutions accredited by WASC (Bus. & Prof. Code, § 1260), a clinical laboratory scientist must have obtained his education from an institution maintaining standards equivalent to those institutions accredited by WASC (Bus. & Prof. Code, § 1261.5), a dietitian shall have completed academic requirements for the field of dietetics and received a baccalaureate degree from a college or university accredited by WASC or other regional accreditation agency (Bus. & Prof. Code, § 22585), a professional counselor shall have obtained his education from an institution maintaining standards equivalent to those institutions accredited by WASC (Bus. & Prof. Code, § 4980.38), peace officers must be high school graduates, or have attained a two-year or four-year degree from a college or university accredited by WASC (Gov. Code, § 1031), teachers hired in a day care center must, among other things, possess a regional occupation program certificate of training in child care occupations issued by

other things, possess a regional occupation program certificate of training in child care occupations issued by a regional occupational program which is accredited by WASC (Health & Saf. Code, § 1597.055), nursing scholarships can only be used in accredited nursing programs at colleges and universities accredited by WASC (Health & Saf. Code, § 127980), and only colleges and universities accredited by WASC may be included in the commemorative collegiate license plate program (Veh. Code, § 5024). We are asked whether these statutes unlawfully discriminate against other accreditation agencies not so specified. **Footnote No. 1** We conclude that the statutes do not unlawfully discriminate.

In 68 Ops.Cal.Atty.Gen. 279, 279-280 (1985) we described the process of accreditation for schools as follows:

> "*Accreditation* is a system 'for recognizing educational institutions and professional programs affiliated with those institutions for a level of performance, integrity, and quality which entitles them to the confidence of the educational community and the public they serve.' [Citations.] In this country that recognition is given by governmentally accepted *nongovernmental* voluntary associations which establish criteria for accreditation, arrange site visits and evaluate institutions and programs which desire accredited status. [Citations.] The device minimizes direct government involvement in education but still promotes both regional and national approaches to determining and assuring educational quality. [Citation.]"

In our 1985 opinion, we noted that "[v]oluntary, nongovernmental accreditation is a characteristic unique to American education" and that "[i]n most other countries the establishment and maintenance of educational standards and institutional recognition thereupon is the responsibility of a central governmental bureau." (*Id.*, at p. 280, fn. 2.)

As one of six regional accreditation associations that has been recognized by the United States Secretary of Education as a reliable authority concerning educational quality within a particular region (34 C.F.R. §§ 602.1, 602.3), and the only such regional body accrediting schools and colleges in California, WASC plays a significant role in the granting of federal funds for education. In 68 Ops.Cal.Atty.Gen. 279, *supra*, we noted that federal programs providing funds to academic institutions and students usually require that the institutions be "accredited" by an agency recognized as "an accrediting agency" by the federal government. (*Id.*, at pp. 280-281.)

With this background in mind, we turn to the issue of whether California's statutes specifying accreditation by WASC and other regional accrediting organizations unlawfully discriminate against alternative accreditation bodies.

1.  Equal Protection Principles

We first address whether the state laws in question violate the equal protection clauses of the federal and state Constitutions. The Fourteenth Amendment to the federal Constitution provides that "[n]o state shall deny to any person within its jurisdiction the equal protection of the laws." Similarly, subdivision (a) of section 7 of article I of the California Constitution provides that "[a] person may not be . . . denied equal protection of the laws . . . ." The federal and state equal protection clauses are substantially equivalent. (See *Kenneally* v. *Medical Board* (1994) 27 Cal.App.4th 489, 495; *Sagaser* v. *McCarthy* (1986) 176 Cal.App.3d 288, 305.)

Here, we apply the "rational basis" test to determine whether these California statutes are unconstitutional under equal protection principles. (See *Weber* v. *City Council of Thousand Oaks* (1973) 9 Cal.3d 950, 958; *Kenneally* v. *Medical Board*, *supra*, 27 Cal.App.4th at 495-496; *Horeczko* v. *State Board of Registration* (1991) 232 Cal.App.3d 1352, 1359.) Application of this test was described in *Kenneally* v. *Medical Board*, *supra,* 27 Cal.App.4th at 499-500, as follows:

"Under the rational basis test, '"the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it."' [Citations.] 'The burden of demonstrating the irrationality of the statute rests on [the party assailing it] and it will not be set aside if any basis reasonably may be conceived to justify it.' [Citations.] 'In general, the [United States Supreme] Court has been especially deferential to legislative classifications in cases of challenges to the state regulation of licensed professions.' [Citation.]"

The Legislature's preference for regional accrediting agencies ensures that school accreditation for purposes of California law will be performed by an agency whose focus is upon a group of schools, particularly those in California. Such specialization affords more attention to, and closer scrutiny of, California's schools, and promotes greater conformity between the accreditation process and California's public policies regarding education. Moreover, the federal government has separately recognized regional accrediting agencies for purposes of determining the quality of educational programs and establishing eligibility criteria for participation in federal loan programs. Also, an exclusively regional approach to accreditation may assist California residents in determining the relative value of the educational programs provided at competing schools and facilities within their region.

Based upon such reasons as the above, **Footnote No. 2** we conclude that the classifications chosen by the Legislature (i.e., "regionally accredited," "WASC or other regional accrediting agency," "equivalent to those institutions accredited by WASC") are rationally related to a legitimate governmental purpose and therefore comply with the equal protection clauses of the federal and state Constitutions. (See *Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 540; *Bilyeu* v. *State Employees' Retirement System* (1962) 58 Cal.2d 618, 623; 64 Ops.Cal.Atty.Gen. 837, 843 (1981).)

### 2. Antitrust Considerations

We also reject the suggestion that state laws specifying accreditation by WASC or other regional accrediting organizations may violate federal or state laws prohibiting monopolistic practices. The two relevant statutory prohibitions are the Sherman Antitrust Act (15 U.S.C. §§ 1, 2) **Footnote No. 3** and the Cartwright Act (Bus. & Prof. Code, §§ 16700-16770). We may look to federal law in applying the state act. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 320.)

The controlling precedent in this area of antitrust law is *Parker* v. *Brown* (1943) 317 U.S. 341, which "held that the Sherman Act did not apply to anti-competitive restraints imposed by the States 'as an act of government.'" (*Columbia* v. *Omni Outdoor Advertising* (1991) 499 U.S. 365, 370.) "The rationale of *Parker* was that, in light of our national commitment to federalism, the general language of the Sherman Act should not be interpreted to prohibit anti-competitive actions by the States in their governmental capacities as sovereign regulators." (*Id.,* at p. 374; see *MSL at Andover, Inc.* v. *American Bar Ass'n* (3rd Cir. 1997) 107 F.3d 1026, 1036.)

As the state statutes regarding WASC and other regional accrediting agencies were enacted by the Legislature undoubtedly for regulatory purposes, they fall within the *Parker* rule and may not be considered violative of the Sherman Act or the Cartwright Act. (See 64 Ops.Cal.Atty.Gen 425, 430-431 (1981).) **Footnote No. 4**

### 3. Anti-Discrimination Laws

Finally, we consider the applicability of the Unruh Civil Rights Act (Civ. Code, § 51; "Act") to the statutes specifying accreditation by WASC or other regional agencies. Civil Code section 51 states:

"All persons within the jurisdiction of this state are free and equal, and no matter

what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

"This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or disability.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The Act's protection is limited to membership in one of the specified classes. (*Gayer* v. *Polk Gulch, Inc.* (1991) 231 Cal.App.3d 515, 521.) Each of the classes enumerated in the statute is based upon a personal characteristic (e.g., race, sex, or religion). Such characteristics cannot be attributed to a business entity or voluntary association such as an accrediting agency. The Act is intended to protect individuals rather than corporate entities. Accordingly, the Act does not make unlawful the state's preferences for regional accrediting organizations.

We know of no other constitutional or statutory provision that would render unlawful the statutes in question. We conclude that California statutes specifying accreditation by WASC or other regional accrediting agencies do not unlawfully discriminate against alternative accreditation agencies.

\* \* \* \* \*

**Footnote No. 1**
We do not deal here with questions concerning discrimination among qualified applicants for government positions based on the accreditation of the educational institutions from which those applicants received their degrees. (See *Terry* v. *Civil Service Commission* (1952) 108 Cal.App.2d 861.) Neither do we have a case of improper delegation of legislative power to private entities (i.e., accrediting agencies). In exercising decision-making authority by industrial or professional associations, there is no invalid delegation of legislative power unless the statute empowers the private association to initiate or enact rules having legal force. (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1234.) Once the Legislature has established the law, it may delegate the authority to administer or apply it to governmental or private entities, provided that the delegation is accompanied by safeguards against arbitrary action. (*Wilkinson* v. *Madera Community Hosp.* (1983) 144 Cal.App.3d 436, 442, citing *Kugler* v. *Yocum* (1968) 69 Cal.2d 371.) The comprehensive federal rules applicable to accreditation by regional accrediting agencies provide such safeguards.

**Footnote No. 2**
Other grounds may exist to support the Legislature's classification in a particular situation. No basis has been provided that any specific statutory classification "is palpably arbitrary" for purposes of the rational basis test.

**Footnote No. 3**
Section 1 provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." (15 U.S.C. § 1.) Section 2 provides in pertinent part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." (15 U.S.C. § 2.)

**Footnote No. 4**
We note that antitrust laws do not regulate the conduct of private individuals in seeking anti-competitive action from the government. (*Columbia* v. *Omni Outdoor Advertising, supra,* 499 U.S. at 379, citing *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.* (1961) 365 U.S. 127.) State law is in accord. (*Blank* v. *Kirwan*, *supra*, 39 Cal.3d at 320.)